<hr />

## KINCAID v. ANDERSON.

## CALDWELL v. KINCAID.

1. The interest of a wife in land conveyed to her prior to the adoption of the Constitution of 1868 (which declared that all the property of a married woman should be her separate estate), is the wife's separate property, notwithstanding the husband's right to the usufruct during their joint lives, under his marital rights which vested before 1868 and were not divested by the constitution then adopted.

2. A married woman is bound by a mortgage given by her to secure money then borrowed to pay off a judgment against her, and to pay taxes on her inheritance.

3. A married woman is not bound by a mortgage given by her to secure the purchase money of mules and supplies sold to her at her solicitation, and after her representation, that they were needed for the cultivation of her lands, where the mortgagee knew that the husband was legally in the possession and control of said lands, and that these mules and supplies were to be used by him in making crops for himself. MR. JUSTICE McGOWAN, dissenting as to the mules.

Before PRESSLEY, J., Fairfield, September, 1889.

Actions by John Kincaid against Thomas Anderson and others, and by Mary S. Caldwell against William A. Kincaid and others. The opinion states the case.

*Messrs. Ragsdale & Ragsdale*, for appellants.

*Mr. Henry N. Obear*, contra.

July 8, 1890.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   Patrick Hastings and Nancy H. Kincaid were married in 1864. At the time, the said Nancy was the owner of a tract of land, containing 750 acres, in Fairfield County. Patrick Hastings was not thrifty or prosperous, but they had control of the land until February, 1886, when the wife, Nancy, died intestate, leaving as her heirs at law her said husband, Patrick Hastings, and brothers, the Kincaids, the latter of whom (the Kincaids) instituted an action for partition of the aforesaid land, making parties the surviving husband, Patrick, and one James A. Brice, who claimed to be a mortgage creditor of the intestate, as assignee of one Flenniken. This is the action first named in the title.

Mary F. Caldwell, claiming also to be a creditor, and not being brought in as a party in the first action, commenced a suit to foreclose another, the oldest, mortgage given by the intestate, which, also, had been taken by Flenniken, and assigned to her. This is the action second in the title.

In both actions the heirs of Mrs. Hastings contended that she was a married woman at the time of the execution of both the Caldwell and the Brice mortgage; that the same were given to secure debts of her husband, Patrick Hastings, and that, therefore, they were void. Pending the first action, in 1887, Patrick, the surviving husband, also died intestate, being entitled, as heir of his wife, to an undivided half interest in said land, and Delia O'Kefe intervened as his heir. John N. Herndon also came in by petition, and set up a judgment held by him against Patrick Hastings. An order was passed. consolidating the two cases, and appointing James G. McCants, Esq., as referee to take the

testimony and calculate the amounts due upon the face of the respective demands.

For the sake of clearness, we will state the three creditors claiming to have liens on the land in controversy—the whole land—through mortgages of Mrs. Hastings, or the interest of Patrick ' Hastings, as heir of his wife, through a judgment against him in his life-time.

(1.) The mortgage executed by both Patrick Hastings and his wife on January 4, 1884, to one Flenniken, to secure $806.50, which arose as follows, viz.: $423.71 for plantation supplies, previously purchased by Mr. Hastings, and $308.76 actually paid by Flenniken to prevent this very land from being sold under a judgment of one Elliott against both Mr. and Mrs. Hastings and one Anderson; and also taxes paid, $34.92 in February and $39.72 in December, 1883. The Circuit Judge struck out the item for supplies, $423.79, but held the mortgage as a binding obligation against the interest of all the parties to the extent of $382.71, with interest according to the terms of the bond, and against the interest of Patrick Hastings, as distributee of his wife, to the extent of the whole amount due thereon.

(2.) After the execution of the above mortgage, in order to obtain further supplies to run the farm, and also to procure some mules needed, application was made again to Mr. Flenniken to furnish such supplies and mules. Flenniken expressly refused to let Patrick Hastings have any supplies or make any arrangements with him, saying that he did not consider a mortgage from him (Hastings) worth anything; that he, Hastings, had only a life estate in the land, and if he died before Mrs. Hastings, the mortgage would not be worth anything. Flenniken also refused to buy any stock for Mr: Hastings. Mrs. Nancy H. Hastings wrote Mr. Flenniken, urging him to assist her in procuring mules, feed, corn, and money, and offering to give him a second mortgage on the land. Mrs. Hastings then came to town and made arrangements to have the second mortgage executed. The bond and mortgage for $1,250, February 11, 1885, were signed by Mrs. Hastings and her husband. They were to secure $400, the purchase money of some mules, and the balance was intended to secure future advances, which she represented to be for her use on

her plantation. In this state of facts, the Circuit Judge held that the second (Brice) mortgage was a valid and subsisting obligation against the interest of all the parties interested, to the extent of the full amount, viz., $1,930.49, the consideration being mules and supplies furnished to Mrs. Nancy H. Hastings on her representations that they were for the benefit of her farms.

(3.) John N. Herndon set up a judgment held by him against Patrick Hastings, which was recovered on May 19, 1869, and duly entered on April 5, 1869, for the sum of $785.45, with interest and costs, and which he claimed to be a preferred lien on the interest of Patrick Hastings in the aforesaid tract of land.

The Circuit Judge held, that during the joint lives of Mr. and Mrs. Hastings, the judgment had a lien upon the life estate of Mr. Hastings in the land, which ended with his wife's death. But it was not a lien upon his expectancy as statutory heir of his wife, which was, of course, contingent upon his surviving her. That before such expectancy fell in, the said Patrick had assigned or aliened it by the two mortgages aforesaid; that the lien of the judgment did not attach to Patrick Hastings' interest, until by the death of Mrs. Hastings it had become vested, and that when said judgment lien did attach, it did so subject to the lien thereon of two mortgages previously executed by both Mr. and Mrs. Hastings; and that said two mortgages are, therefore, prior liens to said judgment, and are entitled to be first paid out of the proceeds of the lands, therein ordered to be sold for the payment of the different liens.

There was no appeal as to the judgment, but John, James, and William Kincaid, heirs of Mrs. Hastings, appealed upon the following grounds:

"1. That his honor should have found that Mrs. N. H. Hastings was a married woman and under the disabilities of coverture at the time of the execution of the bonds and mortgages, and that the said bonds and mortgages were made to secure her husband's debts; that they were not made in relation to her separate estate, or in respect thereto, within the meaning of the act of the general assembly, and his honor should have held that said bonds and mortgages did not bind the estate of Mrs. Hastings.

"2. That his honor should have found, as matter of fact, that

the consideration for said bonds and mortgages were back indebtedness of P. Hastings to D. R. Flenniken, and future advances made by said Flenniken to P. Hastings; that Mrs. N. H. Hastings was a married woman at the time and surety for her husband; that the bonds and mortgages were not such contracts as she was authorized to make, and that the same did not bind her estate.

"3. That his honor should have found as matter of fact, that the lands and mortgages were the contracts of P. Hastings, and that N. H. Hastings, his wife, was only a surety thereon, and should have held as matter of law that they were not binding on her estate.

"4. That his honor should have held as matter of law, that the capacity of a married woman to contract depends upon certain conditions fixed by law, viz., that she shall own and possess a separate estate; that the inheritance of Mrs. Hastings, after the life estate of her husband, was not such estate within the meaning of the law, and that the said contracts did not bind her said inheritance.

"5. That his honor should have found, that Mrs. Hastings had no separate estate within the meaning of the law, and should have held that the bonds and mortgages to Flenniken were void as to her, and did not bind her estate."

We will not attempt to consider the exceptions *seriatim*. It was admitted in the argument, that they substantially make but two questions: First, whether the "inheritance" of Mrs. Hastings, during the life of her husband, was, or was not, her "separate estate" in the sense of the constitution? and if so, second, were the bonds and mortgages executed to Flenniken, and assigned as above stated, only binding upon Patrick Hastings, or were they legal and binding obligations of his wife as well?

Mr. and Mrs. Hastings were married in 1864, before our present constitution was adopted, and, therefore, under the then existing law, the husband had a vested right in the usufruct of the land during their joint lives. But we do not understand that during this period all the interest of the wife was extinguished. "In his wife's estate of inheritance, a husband has, during coverture, a freehold estate jointly with his wife, with absolute owner-

ship of the rents and profits. While he can himself claim the
rents and profits, and severed personalty, he can sue in ejectment
only with her. He can convey his interest, and the same is liable
for his debts, but on his death the property passes to her again
clear and free from all acts of his." 9 Am. & Eng. Encycl. L.,
842. As we understand it, this interest of the wife, whatever it
may be, was made her "separate estate" by the constitution, which
declares in express terms, that "the real and personal property of
a woman, held at the time of her marriage, or that which she may
thereafter acquire, &c., shall not be subject to levy and sale for
her husband's debts, but shall be held as her separate property."
Const., art. XIV., § 8.

*As to the Caldwell mortgage.* As it seems to us, the question
as to what is a "separate estate" does not necessarily touch the
decree as to the Caldwell claim. In that the item of $423.78,
for plantation supplies previously purchased by Mr. Hastings,
was stricken out of the bond and mortgage, so far as Mrs. Hast-
ings was concerned. The remaining items only were allowed. It
appeared that there was a judgment of one Elliott against both
Mr. and Mrs. Hastings, and that the very land now in conten-
tion was levied and about being sold to satisfy that judgment,
when Flenniken, at the instance of the parties, advanced the
money to pay the execution and the taxes for 1883. This ad-
vance was included in the bond and mortgage, which, to that
extent and no more, were allowed to be binding upon Mrs. Hast-
ings. We cannot think that was error. The matters paid were,
in fact, charges upon the land, and, if they had not been paid,
could now be enforced. Flenniken had the highest equity to have
these advances secured to him. "The removal of an existing
encumbrance is a ground for reimbursing the party removing it
out of the fund thus exonerated." *Freeman* v. *Tompkins*, 1
Strob. Eq., 53; *Cathcart* v. *Sugenheimer*, 18 S. C., 123; and
3 Pom. Eq. Jur., § 1211, and those following. We concur with
the Circuit Judge as to this claim.

*Then as to the mortgage assigned to Brice.* Mr. Hastings
could get no further credit from Flenniken, and then Mrs. Hast-
ings wrote, urging him to assist her in procuring mules. money,
supplies, &c., and offering him a second mortgage on this land to

secure him. That arrangement was made, and a bond and mortgage for $1,250 was signed by both Mr. and Mrs. Hastings on February 11, 1885, with interest, the consideration, as stated, being $400 for the purchase of mules and "the remainder for supplies furnished, on the representation of Mrs. Hastings that they were for her and for her benefit, and to be used on her place," &c. Under these circumstances, the Circuit Judge held the whole mortgage debt to be the obligation of the wife. There can be no doubt that the accommodation, supposed to be secured by this second mortgage, was given solely at the request, on the faith, and upon the express contract of Mrs. Hastings—her husband having nothing whatever to do with it, except in assisting his wife in making the arrangement.

But it is urged, that Mr. Hastings, being legally in exclusive possession of the land, the receiver of the supplies, and the owner of the crops made, was really the principal debtor, and his wife merely his security, and her contract, therefore, void. We do not think that can be held, certainly as to the $400 advanced for the purchase of mules, at the urgent instance of Mrs. Hastings and for her benefit alone. The party advancing should not be responsible for the disposition which she or her agent might make of the property. See *Dial* v. *Agnew*, 28 S. C., 460; *Fant* v. *Brown*, 29 *Id.*, 598; and *Greig & Matthews* v. *Smith, Ibid.*, 434.

But as to the remainder of the debt (about $850), as stated, chiefly for plantation supplies, received by Mr. Hastings and consumed in the use in making the crops, there is more difficulty. As I understand it, our late decisions have held, that to make the mortgage of a married woman a binding obligation upon her separate estate, at least two things must concur: first, she must intend to bind her separate estate; and, second, it must not be to secure the debt of another, but primarily for the benefit of her separate estate. There is no doubt here that Mrs. Hastings intended to make her land liable. That was the intention of all the parties, or, otherwise, the accommodation would not have been given. And we may also say, that Mrs. Hastings was one of those intended to be benefited by the crops. Considering, however, the legal rights of the parties, the advances were for her husband, who was in possession of the land and the owner of the crops. In

reference to "the benefits," we are inclined to think that the husband, Mr. Hastings, must be held to be the principal debtor. "A note by a married woman contained a declaration, that 'this note is made with reference to my separate estate, and is intended to be a charge upon the same.' This would seem to be only a declaration that the note was made with a view to bind her separate estate; but if intended to assert that the money then borrowed was for the use of her separate estate, she was not thereby estopped from showing the contrary, where the creditor was not misled by such representations." *Gwynn* v. *Gwynn*, 31 S. C., 482.

In reference, therefore, to this claim, we agree with the Circuit Judge as to the $400 for the mules, which, with the proper interest calculated thereon, is a valid lien against all the parties; and as to the interest of Patrick Hastings, as distributee of his wife, it is a valid lien to the extent of the whole debt, viz., $1,930.49.

MR. CHIEF JUSTICE SIMPSON. I do not think that the estate of Mrs. Nancy Hastings should have been liable for any portion of the debts secured by the mortgages herein, except the amount paid by Flenniken on the judgment against her and her husband, to wit, $382.71, [1] and embraced in the Caldwell mortgage. The consideration of this judgment is not stated, but there was no appeal from it, and we must assume now that it was based upon a valid claim against Mrs. Hastings. The other indebtedness were for supplies furnished to, and for mules bought for, Mr. Hastings, and this, too, with the full knowledge of Flenniken, and to hold Mrs. Hastings liable under such facts would, I think, be in conflict with the recent decisions in such cases. I cannot, therefore, concur except as above stated; with this modification, I concur as to the other parties.

MR. JUSTICE McIVER. It seems to me that the testimony shows clearly that when Flenniken was induced to advance the money for the purchase of the mules, he knew that they were to be bought for the husband and not for the wife; and, therefore, he was not misled by any representations made by the wife. Hence she, or rather her representatives, are not estopped from

---

[1] This included the items for taxes paid.—REPORTER.

showing, as has been done, that this was not a contract as to the separate estate of the wife. I concur, therefore, with the Chief Justice in the views which he has presented. This being the conclusion of the majority of this court,

The judgment of this court is, that the judgment of the Circuit Court be so modified as to accord with these views.