STATE OF WEST VIRGINIA *v.* A. T. MATTHEWS

(No. 8253)

Submitted February 4, 1936. Decided February 18, 1936.

KENNA, JUDGE, dissenting.

*T. C. Townsend, E. S. Bock, Ben Moore* and *Dale G. Casto,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

HATCHER, PRESIDENT:

This is a misdemeanor case in which the defendant, A. T. Matthews, was found guilty and sentenced for operating a "numbers-racket" lottery. He raises only two questions, to-wit, the sufficiency of the indictment and the sufficiency of a search warrant.

(1) The indictment was drawn under Code, 61-10-11, and contained five counts. The defendant was found guilty on all counts. The first count charges that he and one W. B. Wilson in the county of Kanawha "unlawfully did set up and promote and were concerned in managing and drawing a lottery or raffle for money or other thing of value." The defendant contends that a lottery and a raffle are entirely different games and that the count is duplicitous. While recognizing technical differences between the two games, 38 C. J., subject Lotteries, sec. 27, states that a raffle "is generally held to be within the usual definition of a lottery." It is not necessary to weigh closely this contention, however, because the second count relates only to a lottery. That count charges that defendant and Wilson "did knowingly and unlawfully permit such lottery described in the first count of this indictment in premises under their control." Reference to the first count in order to avoid repeating the words "for money or other thing of value," was permissible. *State* v. *Vaughn,* 93 W. Va. 419, 117 S. E. 127. As to the second count, defendant contends that the word "lottery" is generic, and fails to inform him "fully and plainly of the character and cause of the accusation" against him as the Constitution, Article III, Section 14, requires. This count with the words read into it from the first count, charges an offense substantially in the words of the statute. This practice is ordinarily held sufficient. Judge Holmes, when on the Supreme Court of Massachusetts said of an indictment charging simply the promotion of a lottery, "The indictment follows the words of the statute and is well enough." *Commonwealth* v. *Sullivan,* 146 Mass. 142, 144, 15 N. E. 491. Accord: *Salomon* v. *State,* 27 Ala. 26; *Freleigh* v. *State,* 8 Mo. 606; *Trout* v.

*State,* 111 Ind. 499, 12 N. E. 1005; *State* v. *Bove,* 98 N. J. Law 350, 116 Atl. 766; *Knoll* v. *U. S.,* 26 App. D. C. 457; 17 R. C. L., subject Lotteries, sec. 22; 38 C. J., *supra,* sec. 51; *State* v. *Nazel,* 109 W. Va. 617, 156 S. E. 45. This rule is said to have been "applied without reserve" to lottery indictments. *People* v. *Taylor,* 3 Denio (N. Y.) 91, 93. The defendant relies on *State* v. *Simmons,* 99 W. Va. 702, 129 S. E. 757, in which an indictment charging the accused *with having devised a scheme to defraud,* though following the language of the statute, was not sufficiently informative, because of the incalculable number of schemes to defraud. He asserts there are practically as many different kinds of lotteries as fraudulent schemes. Of this we are not informed. We do know, however, that many schemes to defraud are nebulous and involved, and necessitate detailed descriptions in indictments. On the other hand, the word lottery is commonly understood to mean, "A scheme for the distribution of prizes by chance." *Dunn* v. *People,* 40 Ill. 465. Because of that common, well known characteristic of all lotteries —the distribution of prizes by chance—the particulars of the lottery are said to be "only matters of description and not necessary to the accusation." *Pickett* v. *People,* 8 Hun. (N. Y.) 83. No lottery of any kind is permissible in this state under Constitution, Article VI, Section 36, and Code, 61-10-11. In jurisdictions where no lotteries are permissible, it is uniformly held to be "mere surplusage to describe in the indictment either the ticket or the lottery." *State* v. *Follet,* 6 N. H. 53, 55; *France* v. *State,* 6 Baxter (Tenn.) 478, 481; Wharton's Cr. Pro. (10th Ed.), sec. 933; 38 C. J., *supra,* sec. 58.

The further contention is made that the word "premises" used in the second count is a broader term than the word "house" used in the statute, and that penal statutes must be strictly construed. That contention is without force in this instance, because Code, 61-10-14, requires all laws for suppressing lotteries to be construed as remedial instead of penal. See *State* v. *Gaughan,* 55 W. Va. 692, 702, 48 S. E. 210. Remedial law is construed more liberally than penal law. A house is included in the defi-

nition of the word "premises" and the two words are sometimes treated as synonymous. Since the operation of a lottery is not permissible anywhere in this state, a liberal construction of the two words warrants their treatment here as synonymous.

(2) The particular search warrant questioned by defendant directed search of "that certain place of business located at 144½ Summers Street in the city of Charleston." The proof shows that 144½ is the common number of three apartments on the second floor and three apartments on the third floor of a three story building, and that each of the apartments was occupied separately. The defendant contends that the designation of place to be searched simply as 144½ Summers Street, is not sufficiently specific and that the search and the evidence procured thereunder were invalid. The officer who conducted the search made his return on the warrant described above. He had in his possession while making the search another warrant which directed search of "that certain place of business operated by Shorty Wilson on Summers Street in the City of Charleston." Shorty Wilson is W. B. Wilson, and his place was the particular apartment searched. The officer said "it was over the Idle Hour poolroom and lunch room at 144½"; that he knew where to go and did not think there was a "twelve year old child in the city of Charleston that did not know where Shorty Wilson's place is." Both warrants were attached together when received by and while in possession of the officer. He said that he "did not examine them." Sufficiency of the warrant directing search of Wilson's place is not questioned.

The return of an officer on a search warrant is an incident of, and not a source of, authority. His authority emanates entirely from the warrant. The return is simply a ministerial duty imposed by law on the officer. For failure in that duty, the law penalizes the officer himself, but does not invalidate the search. The law contemplates that the return should be made on the very paper which the officer executes. The use of a different paper for the return need not be discussed now, since that use would

affect only the return itself. Here, the officer had in his possession while conducting the search, the two warrants attached together. The two were in effect one, each supplementing the other. The officer's unwitting selection of the warrant containing an indefinite description upon which to make his return, cannot deprive the search of validity under the other warrant. *Moore* v. *Commonwealth*, 206 Ky. 779, 790, 268 S. W. 563; *U. S.* v. *Clark*, 298 Fed. 533; *State* v. *Noble*, 96 W. Va. 432, 123 S. E. 237.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

I am obliged to disagree with the reasoning and conclusion of the majority of the court in this case for the following reasons:

The majority opinion sustains the conviction of the accused upon the second count of the indictment alone. The opinion cites the case of *State* v. *Vaughan*, 93 W. Va. 419, 117 S. E. 127, as authorizing a reference from the second count to the first count of the indictment for a material averment not contained in the second count. The case cited lays down the general rule that the averments of one count in an indictment cannot aid defects in another count. It holds that the words "on the day and year aforesaid" contained in the second count of an indictment are sufficient to lay the time on a date named in the first count. The case cites and distinguishes *State* v. *Bruce*, 26 W. Va. 153, in which it was held that the words "then and there" contained in a second count did not embrace the averment of a date contained in the first. *State* v. *Bruce*, in turn, affirms the rule that averments in one count of an indictment cannot aid defects in another and cites 1 Bishop Crim. Proc., section 431; *State* v. *Lyon*, 17 Wis. 237; and *State* v. *McAllister*, 26 Me. 374, as sustaining the proposition that a reference in the second count of an indictment to the "goods aforesaid"

is not sufficient to embrace an allegation of value contained in the first count. So the exception to the general rule in this state has gone no further than the matter of dates, and, even on that question, a close distinction has been drawn. I find no authority for extending the exception as has been done in the majority opinion in the case at bar.

But the majority opinion here reasons that the second count of this indictment is not subject to the same vices that may be contained in the first count. The second count, in describing the lottery, refers to "such lottery described in the first count of this indictment." The first count charges that the accused "unlawfully did set up and promote and was concerned in managing and drawing a lottery or raffle for money or other thing of value." In other words, the description of the lottery upon which the second count is based is found in the first count, and the second count explicitly depends upon that description. We find that description is of "a lottery or raffle." The majority opinion would permit the reference from one count to the other for the purpose of including the words "for money or other thing of value." It would not include in the reference back the words "a lottery or raffle." The majority opinion recognzies that there are differences between these two games, but states that a raffle is usually within the definition of a lottery. True, but a lottery is not within the definition of a raffle. The terms are not synonymous; they may describe markedly different things, and therefore cannot be coupled by a disjunctive averment. This rule has been discussed by me in the recent case of *State* v. *Dawson*, 117 W. Va. 125, 184 S. E. 253. I do not deem it essential to elaborate upon it here. The rule is a well recognized exception to the general rule, relied upon in the majority opinion, to the effect that an indictment which follows the words of the statute creating the offense is sufficient. I, therefore, think the first two counts are defective. It is virtually admitted that the last three counts are bad.

As pointed out in the discussion in *State* v. *Dawson*, I do not believe that Code, ·61-10-14, which requires the

laws for the suppression of lotteries to be construed remedially, applies to the sufficiency of an indictment drawn for a violation of those laws. This statute relates to the substantive law: not to procedure. In *State* v. *Gaughan*, 55 W. Va. 692, 702, 48 S. E. 210, the statute against exhibiting gaming tables was construed by the court to include a slot machine. This, to my mind, is an example of the correct application of a remedial interpretation of the statute, but the case is not authority for a liberal construction of indictments drawn under the act. To my mind, this is a vital distinction.

I am aware of the liberality that this court has at times indulged in to sustain searches made under search warrants, it having gone so far as to declare in the case of *State* v. *Brown*, 91 W. Va. 709, 114 S. E. 372, Pt. 4 of the Syllabus: "The fact that the officer making a search under a lawful warrant therefor may have declined to exhibit his authority to the wife of the accused, he being absent, will not render the search and seizure unreasonable within the provision of sections 5 and 6 of Article III of the Constitution. Unless the statute so provides, an officer charged with the execution of a lawful warrant therefor is not obliged to exhibit the warrant as a prerequisite to his right to execute the writ." At the same time, in the case of *State* v. *Moran*, 103 W. Va. 753, 757, 138 S. E. 366, this court has quoted with approval the following language from Cooley's Constitutional Limitations: "But as search warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed."

In this case, the same officer was armed with two search warrants procured at the same time, each purporting to authorize a search of the same place. One of them described the place to be seached as "that certain place of business located at No. 144½ Summers Street." The proof shows that No. 144½ Summers Street is a stair-

way leading up to second and third floor apartments occupied by a number of different tenants. Such a description, under the cases, is too indefinite to authorize a search, without further designation, of any one of the several different places included within the general description. *U. S.* v. *Mitchell,* 274 F. 128; *U. S.* v. *Chin On,* 297 F. 530; *Myer* v. *State,* 34 Okl. Cr. 421, 246 Pac. 1105; *State* v. *Bass,* 153 Tenn. 162, 281 S. W. 936. See also, *Tynan* v. *U..S.,* (C. C. A.) 297 F. 177. The return was made upon this warrant, and while the case of *State* v. *Noble,* 96 W. Va. 432, 123 S. E. 237, and other cases cited on the point in the majority opinion are authority for the proposition that the failure of the officer executing a search warrant to indorse a return thereon does not invalidate the search, these cases by no means hold that a return may be indorsed upon one search warrant, and the officer permitted to look to another search warrant, procured at the same time, to validate his conduct. It is doubtful whether their actual holding is in accord with the weight of authority. See Cornelius on Search and Seizure, Paragraphs 251, 255, 184, and cases cited to sustain the text. It seems to me quite plain that if it be permissible for one officer to go armed with two search warrants, procured at the same time and describing the same premises to be searched, and to indorse his return upon one and not upon the other, as in this case, that at least in the absence of a contrary showing, the presumption would be that he executed the warrant upon which he made his return and must look to it alone for his authority for the search. There certainly is no contrary showing in this case. More than affirming this view, it has been held that no such contrary showing may be made and that the fact of the return having been made upon the warrant concludes the state from showing that any right to make the search existed other than that created by the search warrant upon which the return was made. *Davis* v. *State,* 187 Wis. 115, 203 N. W. 760; *United States* v. *Bosoni,* (D. C. Wyo.) 57 F. (2d) 328. The circumstance that another warrant authorizing the search of "that certain place of business operated

by Shorty Wilson on Summers Street in the City of Charleston," etc., was attached to the first, to my mind, does not justify this court in looking to the second search warrant, upon which there was no return, to justify a search that could not be justified under the warrant that was actually executed. There was no attempt in the first search warrant to incorporate anything contained in the second search warrant within the terms of the first by reference to the second. I do not understand the legal effect arising from the circumstance that the two papers were "attached together." The cases seem uniform on the proposition that even the complaint or affidavit upon which a search warrant is based cannot be used in aid of the description of the place to be searched contained in the warrant unless there is a specific reference to the complaint or affidavit contained in the body of the warrant. *Smith* v. *Commonwealth,* 210 Ky. 698, 276 S. W. 495; *State* v. *District Court,* 70 Mont. 191, 224 P. 862; *Monroe* v. *State,* 123 Tex. Cr. R. 84, 57 S. W. (2d) 856; *People* v. *Ranes,* 230 Mich. 384, 203 N. W. 77; Cornelius on Search and Seizure, sec. 200, p. 488. There is no case holding that reference may be had, under any circumstances, from one search warrant to another search warrant for the purpose of description.

I do not mean by the foregoing to agree that the description of the place to be searched set forth in the second search warrant directed against "that certain place of business operated by Shorty Wilson on Summers Street in the City of Charleston" is sufficient. The following cases seem to me to hold that such a description is not good. *United States* v. *Alexander,* (D. C., S. D., Fla.) 278 F. 308; *Thomas* v. *State,* 54 Okl. Cr. R. 36, 14 P. (2d) 430; *State* v. *Reis,* (Mo. App.) 268 S. W. 391; *United States* v. *2,615 Barrels, More or Less, of Beer,* 1 F. (2d) 500; *United States* v. *Inelli,* 286 F. 731. It is true that the officer conducting the search stated that the place was over the Idle Hour poolroom, but the warrant does not so describe it, and, furthermore, the proof shows that there were several places occupied by others which were also over that poolroom. The fact that the same officer

stated that any twelve-year-old child in a city of sixty thousand inhabitants, in his opinion, would know where Shorty Wilson's place was, I think, had best be passed over charitably. To rely upon the officer's knowledge of the place *intended to be described*, to my mind, makes the validity of the warrant depend upon the chance circumstance of what officer happens to be selected to execute it, and begs the whole question of sufficient description. The majority opinion states that the validity of this second search warrant is not questioned. I find it specifically questioned in the assignments of error, although, for obvious reasons I think, it is not briefed.

But, although I admit candidly that I have not been able to find cases directly upon the question, I entertain serious doubt as to whether more than one search warrant for the search of the same premises should be issued at the same time, and placed in the hands of the same officer. It seems to me that doing so would, under the rule laid down in the majority opinion, arm the officer with a very dangerous discretion as to which warrant he should exhibit in making his search, which one he should make his return upon, and which one should be depended upon at the trial as justification for the search. The hapless citizen whose home might be searched would certainly not know where to raise the issue of an invalid search warrant. The majority opinion says that the officer may make his return upon one and depend for his authority on another. Certainly if, under this practice, the officer is to be permitted to rely for his authority upon any one of several search warrants or to make his selection between them at the time of the trial, as in this case, then the practice would result in a close similarity to the general writs of assistance so bitterly complained of at the time of the American Revolution. Could the officer make a separate search under each of several different warrants procured at the same time? This court has held in *State* v. *Moran*, 103 W. Va. 753, 138 S. E. 366, that a second search two days later than the first could not be made under the same search warrant. Could this rule be avoided by the simple expedient of procuring more than

one search warrant at the same time and making separate searches under each? Of course, I recognize that these suggestions are mere speculation, but I think that the majority opinion in this case gives ground for them, and I think further that the matter of speculation should not be permitted to creep into the law of search warrants.

For the reasons that I have stated, I am of the opinion that this case should be dismissed on account of the insufficiency of the indictment. I express my views on the search warrant phase of the case because I do not want to assist in establishing in this state what I regard as a dangerous precedent. Today, we have before us a case involving what appears to have been a "gambling joint." Tomorrow, the home of some highly respected citizen may be invaded under the law we have laid down.