STATE OF WEST VIRGINIA

*v.*

OKEY HUDSON

(No. 9763)

Submitted January 29, 1946.    Decided March 19, 1946.

*W. Hayes Pettry*, for plaintiff in error.

*Ira J. Partlow*, Attorney General, and *Ralph M. Hiner*, Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

The defendant, Okey Hudson, having been found guilty by a jury, in the Intermediate Court of Kanawha County, of violating Section 11, Article 10, Chapter 25, Acts of the Legislature, 1939, was, on February 7, 1945, sen-

tenced to pay a fine of $500.00, to confinement in the county jail for twelve months, and to work upon the roads of the county during the term of his imprisonment and until the payment of the fine and the costs. The Circuit Court of Kanawha County, by order entered May 14, 1945, denied his petition for a writ of error and supersedeas to the foregoing judgment on the ground that the action of the trial court was plainly right. The case is here on writ of error to the judgment of the Circuit Court.

Okey Hudson, Geneva Beane Veltri, and James Aleff were jointly indicted, and, each having demanded a separate trial, the State elected to try the defendant Hudson. The indictment contains five counts. The first count charges that the defendants unlawfully did set up and promote and were concerned in managing a lottery and raffle, for money and other things of value. The second count charges that the defendants did knowingly and unlawfully permit the lottery described in the first count in premises under *his* control. The third count charges that the defendants did knowingly and unlawfully permit money and other property to be raffled for in premises under *his* control. The fourth count charges that the defendants did knowingly and unlawfully permit the sale in premises under *his* control of chances and tickets, and shares of tickets, in a lottery, and in writings, certificates, bills, tickets, and devices purporting and intending to guarantee and assure to any person, and to entitle such person, to a prize, and a share of and interest in, a prize to be drawn in a lottery. And the fifth and last count charges that the defendants did knowingly and unlawfully buy and sell, transfer, have in *his* possession, for the purposes of sale, and with intent to exchange, negotiate, and transfer, chances and tickets and a share of tickets, in a lottery and other such writing, bill, token and device. The offenses charged in the various counts are alleged to have been committed in Kanawha County within one year next prior to the finding of the indictment; and each count of the indictment concludes against the peace and dignity of the State.

Before the trial, the defendants filed their motion,

supported by affidavit, that the court require the State to file a bill of particulars. The affidavit alleges that the indictment is indefinite in that it fails to designate the place where and the time when the defendants set up and promoted and were concerned in managing and drawing the lottery and raffle with which they were charged. It also propounds several interrogatories as to the contentions of the State and requests that the defendants be advised in what manner they were concerned in and promoted a lottery, permitted the sale of chances and tickets in premises under their control, and inquires as to which one of the offenses charged in the indictment was committed by the defendants. This part of the affidavit is, in effect, a motion to require the State to make an election of the particular offense upon which it relies for conviction and to direct it to disclose the evidence which it intends to produce upon the trial. In response to this demand the State, by order of the trial court, furnished the defendants a bill of particulars, filed on February 7, 1945, which, in substance, followed the language of the statute in stating the several offenses charged in the indictment, and specified the place and the time the offenses were alleged to have been committed. At the beginning of the trial the defendants objected to the bill of particulars and moved the court to require the State to furnish a more specific bill of particulars. The court overruled the objection and denied the motion.

The defendants then made a motion to quash and filed their demurrer to the indictment and each of its counts. The grounds are, in substance, that the indictment is too indefinite to inform the defendants fully and plainly of the character and the cause of the accusation against them; that the indictment charges the offenses by recitals instead of by direct allegations; and that the indictment does not allege, as a necessary element of the offense, that the odds in the lottery charged were in favor of the exhibitors and against the betters. The court denied the notion to quash and overruled the demurrer.

During the month of December, 1944, members of the

Department of Public Safety, attired in plain clothes, visited the Plaza Cigar Store at 121 Summers Street in the City of Charleston, Kanawha County, West Virginia, and purchased tips which gave the privilege to the holder to punch numbers from a board which was being operated at that place. At the time of the visit, several persons were engaged in the act of punching numbers from the board, which was four or five inches long and three inches wide. The winning number was concealed at the top and a controlling or tip number openly appeared elsewhere on the board. Certain tickets were placed or fastened in the board in such manner that a person who had purchased a chance could, by punching a particular place on the surface, eject from a small compartment or section a roll of paper which bore a specific number. In operating the board, the person keeps the rolls which carry his tip number until all the sections of the board are punched. The concealed number is then exposed. The person who has a tip number and a number which corresponds with the concealed number is the winner of the prize. In this case the prize was money but the amount of money won is not shown by the testimony. The evidence fails to show that the defendant Hudson participated in, directed, or managed the operation of the punch board. It does appear, however, that he was behind the counter in the store and was engaged in operating another game of chance known as twenty-six. It is also shown that he took money from one of his pockets to supply funds to the operator of the last mentioned game to pay its losses. No evidence was introduced to show that the defendant collected any money from the punch board or that he was the owner or the proprietor of the Plaza Cigar Store.

After the visits of the various officers, which occurred on December 5, 19, 20 and 21, 1944, a search warrant was issued on December 23, 1944, and the place was raided by members of the Department of Public Safety and a deputy sheriff of Kanawha County in the afternoon of that day. At the time of the raid, which apparently was expected, the defendant seized a cigar box containing

money, the amount of which is not shown, and started to run from the room, but he was arrested before he could escape. Upon the trial the State was permitted, over the objection of the defendant, to introduce evidence that the defendant operated a game known as twenty-six. The trial court admitted that evidence for the limited purpose of showing motive, intent and system in connection with the operation of the punch board, and not as evidence to support a conviction for the offense of operating the twenty-six game. At the conclusion of the evidence, a motion of the defendant to strike the evidence offered by the State and to direct a verdict for the defendant was overruled by the court. The proof introduced by the State consisted of the testimony of three members of the Department of Public Safety, Troopers Randall, Perrine and Hampton, who at various times visited the place at which the defendant was arrested or took part in the raid on December 23, 1944. The defendant did not testify and he offered no evidence in his behalf.

By his numerous assignments of error the defendant contends, in substance, that the trial court erred: (1) In overruling the motion to quash and the demurrer to the indictment; (2) in holding that the bill of particulars was sufficient and in refusing to require the State to furnish a more specific bill of particulars; (3) in admitting, over the objection of the defendant, evidence that he committed a different and distinct offense than the offense for which the State sought to convict him; (4) in refusing to direct a verdict of not guilty on the ground that the evidence was insufficient to support a conviction; (5) in giving an instruction offered by the State and in refusing to give two instructions offered by the defendant; and (6) in refusing to set aside the verdict and in entering judgment upon the verdict.

The first contention of the defendant is without merit. The indictment, in its several counts, closely follows the terms of the statute and sufficiently describes the offenses which it enumerates. Ordinarily an indictment, which

states an offense in the language of the statute which creates it, is sufficient. *State v. Brown,* 101 W. Va. 160, 132 S. E. 366; *State v. Lantz,* 90 W. Va. 738, 111 S. E. 766; *State v. Constable,* 90 W. Va. 515, 112 S. E. 410; *State v. Chafin,* 78 W. Va. 140, 88 S. E. 657; *State v. Jones,* 53 W. Va. 613, 45 S. E. 916; *State v. Gould,* 26 W. Va. 258; *State v. Riffe,* 10 W. Va. 794.

Likewise the court did not err in overruling the objections of the defendants to the bill of particulars furnished by the State or in denying the motion to require a more specific bill of particulars. Generally the granting or the refusing of a motion for a bill of particulars is in the sound discretion of the trial court. *Dale v. Atwell,* 103 W. Va. 590, 138 S. E. 201; *State v. Joseph,* 100 W. Va. 213, 130 S. E. 451; *Adkins v. Wayne County Court,* 94 W. Va. 460, 119 S. E. 284; *State v. Counts,* 90 W. Va. 338, 110 S. E. 812; *State v. Lewis,* 69 W. Va. 472, 72 S. E. 475. It is within the discretion of the court whether a bill of particulars is sufficient, or whether in fact a bill of particulars should be required. *State v. Koski,* 101 W. Va. 477, 133 S. E. 79. Denial of a motion to require the State to supply a bill of particulars in a criminal case is not cause for reversal by the appellate court unless it clearly appears that such denial was prejudicial to the defendant. *State v. Koski,* 101 W. Va. 477, 133 S. E. 79; *State v. Counts,* 90 W. Va. 338, 110 S. E. 812.

Here the offense charged in each of the various counts of the indictment is described with sufficient particularity to inform the defendant fully and plainly of the character and the cause of the accusation. The language of each count of the indictment gave him all the information necessary to acquaint him with the offense charged and to enable him to defend against it. In the circumstances no bill of particulars was necessary. Nevertheless the court required the State to furnish a bill of particulars which supplemented the indictment to the extent of informing the defendant of the time when, and the specific place where, the offenses were charged to have

been committed. The defendant was entitled to no more information than that furnished by the indictment and the bill of particulars; and the action of the trial court in denying his motion for a more specific bill of particulars did not prejudice any right of the defendant and did not amount to an abuse of sound discretion.

The defendant insists that the admission of evidence that he engaged in the twenty-six game was prejudicial error which calls for reversal of the judgment. The State relied for a conviction, under the indictment, upon its proof of his alleged criminal acts in connection with the punch board and not upon his conduct in connection with his participation in the twenty-six game. The evidence to which the defendant objected was introduced, not to convict him of the offense of operating the twenty-six game, but solely for the purpose of showing motive, intent and system in connection with his acts relating to the operation of the punch board, and it was so limited by the court. As a general rule, the State, in a criminal case, will not be permitted, upon the trial of one offense, to offer proof of a substantive offense not in any way connected with the specific offense charged. *State v. Light*, 127 W. Va. 169, 31 S. E. 2d 841. In that case the defendant was tried upon an indictment which contained two counts. The first count of the indictment charged the defendant with keeping a house of ill fame; the second count charged that she leased and let premises to be used as houses of ill fame. The State elected to try her on the charge specified in the first count. Upon the trial, over the objection of the defendant, the State introduced evidence to the effect that she had committed distinct substantive offenses in selling intoxicating liquors on several occasions and that she had been convicted for one such offense. This Court reversed the judgment, and in so doing held that the admission of testimony relating to those offenses violated well established principles, and that, as a general rule, upon the trial of a person indicted for a specific offense, evidence showing commission of distinct and unconnected criminal acts, other than the

act with which he is charged, is inadmissible.

There are, however, important and well defined exceptions to this general rule. Within the scope of those exceptions, proof of another offense by the accused is admissible when such offense has some logical connection with, and tends to establish, the commission of the specific offense charged against him. *State v. Adkins,* 109 W. Va. 579, 155 S. E. 669; *State v. Leatherwood,* 112 W. Va. 339, 164 S. E. 295. In the case of *State v. Johnson,* 105 W. Va. 598, 143 S. E. 352, this Court held that, upon the trial of a specific offense, evidence of other crimes chargeable to the accused may be relevant to show motive or intent when such other crimes are similar in character and near in point of time to the specific offense charged and indicate that such specific offense is a part of a system of criminal action. Measured by the holding of this court in the case last cited, the evidence admitted by the court, and of which the defendant complains, tends to show that he was engaged in the operation of another game of chance at the same time and at the same place at which the punch board was in use, and, for the operation and the promotion of which, and for knowingly permitting its operation and its promotion in premises under his control, he was indicted and tried. These acts are similar in character and they indicate a systematic course of criminal conduct. The evidence was relevant for the limited purpose for which it was admitted and its admission by the trial court was proper.

In support of his motion for a directed verdict of not guilty, the defendant vigorously asserts that the operation of a punch board is not a lottery. He further contends that if a punch board is a gambling device, it is punishable, not under the statute which prohibits and renders criminal a lottery, Section 11, Article 10, Chapter 25, Acts of the Legislature, 1939, but under another and different statute, Code, 61-10-1, which makes the keeping or the exhibiting of certain designated gaming devices a criminal offense. The State, with equal vigor, insists that the operation of a punch board is a lottery,

and, as such, is within the terms of Article VI, Section 36, of the Constitution of this State, which expressly deprives the legislative department of any power to authorize lotteries or gift enterprises for any purpose and commands it to pass laws to prohibit the sale of lottery or gift enterprise tickets in this State. It also contends that the operation of a punch board is forbidden by the statute enacted pursuant to the foregoing constitutional mandate. Section 11, Article 10, Chapter 25, Acts of the Legislature, 1939. Though it is plain that every lottery is a gaming device, it is equally clear that not every gaming device is a lottery within the generally recognized meaning of the word. It is therefore necessary to determine whether a punch board of the type described in the evidence in this case is a lottery or a different kind of gaming device.

This Court has held that a lottery is commonly understood to mean a scheme for the distribution of prizes by chance. *State v. Matthews*, 117 W. Va. 97, 184 S. E. 665. The distinction between a lottery and other forms of gambling has been considered and recognized in several other jurisdictions. In some of those jurisdictions it is declared that the element of chance must dominate before the scheme or the device can be called or designated a lottery. The decided weight of judicial authority supports that view. In the case of *ex inf. McKittrick v. Globe-Democrat Publishing Company*, 341 Mo. 862, 110 S. W. 2d 705, decided by the Supreme Court of Missouri in 1937, under an existing statute which prohibited lotteries pursuant to a constitutional provision in substance similar to that contained in the Constitution of this State, that Court, in an exhaustive and well reasoned opinion, expressed the view that a lottery includes every scheme or device by which anything of value' is, for a consideration, allotted by chance; and that the elements of a lottery consist of consideration, prize and chance. The essential elements of a lottery are consideration, prize and chance, and, where they are present and chance predominates, even though skill or judgment may enter

to some extent in the operation of a particular scheme or device, the scheme or device is a lottery. A scheme or device may constitute a lottery although it may not amount to a widespread pestilence, an expression used by some courts in considering the characteristics or elements of a lottery. In England and in Canada, where the pure chance doctrine appears to prevail, the rule seems to be different from that recognized by the weight of judicial authority in this country, in that a scheme or device is not a lottery when the participant pays a consideration for a chance to win a prize, unless the result depends entirely upon chance.

The doctrine recognized and applied in most jurisdictions in the United States is that a lottery exists when consideration, prize and chance are present, and when chance operates as the dominant factor. Within this principle a lottery exists, even though skill, judgment or research enters to some extent, if chance predominates in the determination of the result. It is often difficult to determine whether the element of chance is dominant or subordinate in a given case, but if chance predominates over skill, and the other essential elements of consideration and prize are present, the scheme or the device is a lottery. 34 Am. Jur., Lotteries, Section 6; 17 R. C. L. 1225; *State ex inf. McKittrick v. Globe-Democrat Publishing Company*, 341 Mo. 862, 110 S. W. 2d 705; *State v. Coats*, 158 Ore. 122, 74 P. 2d 1102; *United Detroit Theatres v. Colonial Theatrical Enterprises*, 280 Mich. 425, 273 N. W. 756; *Commonwealth v. Plissner*, 295 Mass. 457, 4 N. E. 2d 241.

In general lotteries are judicially condemned as particularly vicious in comparison with other forms of gambling because of their public nature and the contaminating and unwholesome influence which they produce in a community in which they flourish. A punch board which, for a consideration, distributes merchandise to the holder of a lucky number has been held to be a lottery. *Helen Ardell, Inc. v. Federal Trade Commission*, 101 F. 2d 718. The vendor of a punch board consisting

of a board with holes in which blank slips and slips calling for prizes are inserted and the right to punch one hole is sold to a purchaser who receives either nothing or a determined prize, is concerned with setting up a lottery within the meaning of a statute of the State of Alabama which makes a lottery a criminal offense. *Brewer v. Woodham*, 15 Ala. App. 678, 74 So. 763. In the case of *Callison v. State* (Tex. Civ. App.), 146 S. W. 2d 468, the Court uses this language: "Obviously, the punch boards are lotteries; purely games of chance or luck. The numbers are hidden from view until punched from the board by players. No skill is exercised in the operation of the game, and the boards can be used for no purpose other than gaming; they were designed for that purpose only." It is clear that all of the elements of a lottery are present in the case at bar. Those who participated in the operation of the punch board paid for the right to share in the distribution of a prize, and the result of their venture depended entirely upon chance. No skill was required of any person who punched a number from the board, and the prize consisted of money. The punch board described in the evidence is a lottery, and this Court so holds.

The defendant complains of the action of the trial court in giving Instruction Number One offered by the State. This instruction told the jury that a lottery is a scheme to induce one to pay or agree to pay a valuable consideration for a chance to draw a prize, and that if the jury believed from all the evidence beyond a reasonable doubt that the defendant, at the time and place mentioned and described in the evidence, did unlawfully set up and promote and was concerned in managing and drawing a lottery and raffle for money or other things of value, he was guilty as charged in the indictment and the jury should so find. The instruction correctly deals with a lottery and submits to the jury the question whether the defendant set up and promoted the lottery with which he was charged. Though the instruction uses the terms lottery and raffle in the conjunctive, and though there

may be a technical difference between them, a raffle is generally held to be within the usual definition of a lottery. *State v. Matthews,* 117 W. Va. 97, 184 S. E. 665. There is no substantial distinction between a lottery and a raffle, and the indictment conjunctively charges that the defendant promoted both, devices. Code, 61-10-14, requires all laws for suppressing lotteries to be construed as remedial, and by such construction the words lottery and raffle should be and they are here considered as synonymous. The instruction correctly propounded the law on that point and in giving it the court did not commit error.

The defendant also assigns as error the action of the trial court in refusing to give his requested Instructions Number Three and Number Six.

Instruction Number Three is correct, but its substance is covered by Instruction Number Two, which the court gave at the instance of the defendant. For that reason the refusal by the court to give the instruction was not error. The duplication of instructions is unnecessary and undesirable. *Robertson v. Hobson,* 114 W. Va. 236, 171 S. E. 745.

Instruction Number Six would have told the jury that if the jury believed from the evidence that an offense had been committed, but not the offense set forth in the indictment, it was the duty of the jury to find the defendant not guilty. This instruction would have submitted to the jury the question whether there was a variance between the allegations of the indictment and the proof in the case. That question was one of law to be determined, not by the jury, but by the court. An instruction which submits a question of law for jury determination is erroneous and should be refused. *Howard v. Virginian Railway Co.,* 102 W. Va. 432, 135 S. E. 386; *Britton v. South Penn Oil Co.,* 73 W. Va. 797, 81 S. E. 525.

The question whether the action of the court was erroneous, in refusing to direct a verdict of not guilty on the ground that the evidence was insufficient to support

a conviction and to set aside the verdict for that reason, and in entering judgment upon the verdict, remains to be considered. The verdict returned by the jury was general in form and did not specify on which count or counts of the indictment the defendant was found guilty. This general finding, however, does not vitiate the verdict in this case. If the evidence is sufficient to sustain the offense charged in any good count in an indictment, which contains several counts which relate to the same transaction, a general verdict of guilty will not be set aside because it fails to designate the particular count of the indictment upon which the verdict is based. 14 R. C. L. 211; 27 Am. Jur., Indictments and Informations, Paragraph 190; *State v. Johnson*, 111 W. Va. 653, 164 S. E. 31. The defendant insists, however, that the evidence in this case, which is undisputed and which, as above stated, consists of the testimony of three members of the Department of Public Safety, is wholly insufficient to sustain a verdict of guilty under any count of the indictment.

It is clear that the evidence does not show that the defendant participated in any way in the operation of the punch board. His only connection with it, as disclosed by the evidence, was his presence behind the counter in the establishment in which the board was in operation, within sight of, but at some distance from, its location in the room. He furnished no money for its use and distributed no prizes that were awarded. The evidence showing the acts performed by the defendant, which related to the operation of the twenty-six game, can not be looked to, or depended upon, as positive evidence to convict him of the offense committed by the operation of the punch board. The State, by its procedure in the trial, in effect, elected to, and did, rely for conviction of the defendant, under each count of the indictment, on evidence in connection with his actions and conduct concerning the operation of the punch board; and the defendant was not on trial for operating or participating in the twenty-six game. The evidence of his management

or supervision of the twenty-six game was admitted, and was admissible, only for the purpose of showing motive, intent and system in connection with his acts relating to the offense which resulted from the operation of the punch board.

There is no evidence that the defendant, at the time, was the owner or the proprietor of the place in which the punch board was being used or operated, or that he had any control over the premises other than that he was stationed nearby and behind the counter and, while so present, participated in conducting the twenty-six game to the extent of furnishing money to pay the losses incurred by Geneva Beane Veltri, who was actually engaged in its operation. These facts arouse suspicion that he was or might have been in charge of the place, but evidence that he was in control of the premises, which, if such was the fact, probably could have been procured without difficulty, is entirely missing. No witness testified to any act which showed that the defendant was in charge of or controlled the premises in which the acts proscribed by the statute, and charged in the various counts of the indictment, were committed. Such control is an essential element of each of the offenses charged in the second, third and fourth counts of the indictment; and to convict the defendant of any of those offenses it was incumbent upon the State to prove that he performed some act which showed that he knowingly permitted the prohibited conduct in premises under his control.

The evidence which connects the defendant with the operation of the punch board, under the charges in the first and fifth counts, or with knowingly permitting its operation, in premises under his control, under the charges in the second, third and fourth counts of the indictment, is wholly insufficient to justify the jury in believing that the guilt of the defendant of any of the offenses charged in any count of the indictment was established beyond all reasonable doubt. It is contended that the facts shown by the State, as detailed above, and

the action of the defendant, at the time of the raid, in seizing a cigar box containing money, and in attempting to elude the arresting officers, sufficiently proved his commission of the offenses charged against him in the various counts of the indictment. Though the conduct of the defendant, in the circumstances, creates strong suspicion of guilt, it is not sufficient to establish his guilt when considered alone or in connection with the other facts shown by the evidence. A conviction based on mere suspicion, however strong, of the guilt of the accused, can not stand. *State v. Beall,* 98 W. Va. 189, 126 S. E. 569; *State v. Chafin,* 78 W. Va. 140, 88 S. E. 657; *State v. White,* 66 W.Va. 45, 66 S. E. 20.

The law requires the guilt of a defendant in a criminal case to be established by competent evidence beyond a reasonable doubt. The burden rests upon the State to prove the guilt of one accused of crime not merely by a preponderance of the evidence but by evidence sufficient to establish his guilt beyond a reasonable doubt. *State v. Scurlock,* 99 W. Va. 629, 130 S. E. 263; *State v. Campbell,* 115 W. Va. 198, 174 S. E. 797; *State v. Dudley,* 96 W. Va. 481, 123 S. E. 241. This requirement has not been met or satisfied in this case, and the verdict of the jury, being without sufficient evidence to support it, should have been set aside by the trial court. *State v. Chafin,* 78 W. Va. 140, 88 S. E. 657; *State v. White,* 66 W. Va. 45, 66 S. E. 20; *State v. Miller,* 42 W. Va. 215, 24 S. E. 882; *State v. Zeigler,* 40 W. Va. 593, 21 S. E. 763; *State v. Foster,* 21 W. Va. 767. It follows that the action of the trial court in refusing to direct a verdict of not guilty, and, after the jury returned a verdict of guilty, in denying the motion of the defendant to set aside the verdict and award him a new trial, constitutes reversible error.

For the foregoing reason the judgment of the Circuit Court of Kanawha County, and the judgment of the Intermediate Court of Kanawha County, are reversed, the verdict of the jury is set aside, and this case is remanded to the Intermediate Court of Kanawha County

for a new trial which is hereby awarded the defendant.

*Reversed and remanded.*

LOVINS, JUDGE, dissenting:

The law stated in the syllabus of the majority opinion is sound and I concur therein, but I do not concur in the application of the principle stated in the sixth point of the syllabus to the facts established in this case, and think the verdict of guilty and judgment entered thereon should be upheld.

In all prosecutions for crime there are two basic elements to be established beyond all reasonable doubt: first, that a crime has in fact been committed; and, second, that the accused is the perpetrator thereof.

In this case the first element was established by clear, cogent and direct evidence. Unquestionably a lottery was set up and promoted at the time and place charged in the indictment as amplified by the bill of particulars. No reasonable doubt exists as to whether a lottery was set up, promoted and permitted in the Plaza Cigar Store at 121 Summers Street, in the City of Charleston, during the month of December, 1944.

The evidence adduced by the State fails to show that defendant Hudson controlled the premises where the lottery was in operation. Therefore, the charges contained in the second, third and fourth counts of the indictment were not sustained by proof. Likewise there is no evidence that Hudson bought, sold, transferred or had in his possession any chances, tickets and shares of tickets in the lottery for any purpose, and, therefore, proof of the charge contained in the fifth count of the indictment failed.

But I think there was ample proof to sustain the charge that defendant Hudson "did set up, promote and was concerned in managing and drawing a lottery", the charge contained in the first count of the indictment.

The lure of gambling, with its insidious inroads on morality, appeals to the baser side of human nature, and the deleterious effect on its votaries calls for stern treatment of those who promote and encourage gambling for gain. Such persons "toil not neither do they spin," but derive their livelihoods from their foolish and unwary dupes.

Considering realities rather than theories, the proof adduced by the State shows that a gambling establishment was conducted on one of the principal streets of the capital of this State, to which members of the public seem to have been freely admitted. Such condition is of great danger to public welfare, and every means should be adopted to suppress and eventually eliminate it.

Accused was present at the time and place when and where the crime was committed. According to the proof, he moved freely back and forth behind the counter of the cigar store, from which it is reasonable to infer that defendant was not an innocent bystander.

Defendant furnished money from his pocket to his co-indictee, Geneva Beane Veltri, to make good the losses sustained in the operation of the "twenty-six" game, which was conducted at the same time and in the same place as the lottery. That circumstance is strongly indicative of a promotional or proprietary interest in the gambling there being carried on, including the lottery. The inferences to be drawn from the fact that defendant was present behind the counter and furnished money in another game are those authorized by common sense, and require no citation of authority to give them full force and effect. This record clearly discloses a systematic course of criminal conduct, a gambling establishment in which varieties of gambling devices were offered to the public, seemingly in an open manner.

At the time of the raid defendant attempted to flee with a cigar box containing money. The sole fact of flight by the accused from the scene of a crime is not sufficient to support an inference of guilt; but it is evi-

dence tending to show guilt, and is to be considered by the jury and given such weight as the jury may deem proper, in connection with other facts and circumstances. *Jenkins v. Commonwealth,* 132 Va. 692, 111 S. E. 101; *Chandler v. Commonwealth,* 135 Va. 486, 115 S. E. 703; *Duty v. Commonwealth,* 137 Va. 759, 119 S. E. 62; 2 Wharton's Criminal Evidence, 10th ed., 1494; Underhill's Criminal Evidence, 4th ed., 471.

The inculpatory circumstances here shown are in no wise explained. It is true that defendant's presence, his use of money and his flight, considered separately, are not sufficient to sustain a verdict of guilty; but when taken together, the cogency and sufficiency of the evidence are beyond cavil.

If defendant was a bystander, why did he remain behind the counter? If he had no interest in the gambling establishment, why did he furnish money out of his pocket to make good losses in the twenty-six game? If he was innocent, why did he attempt to flee or fail to explain such attempt? Upon consideration of these facts it is reasonable to infer that defendant was guilty. Clearly, defendant Hudson had some interest in the operation and maintenance of the gambling establishment, including the lottery; otherwise there is no rational basis explanatory of his conduct.

The circumstances established by the State without dispute, clearly show the guilt of defendant Hudson to the exclusion of every reasonable hypothesis; and, therefore, I would affirm the judgments of the Intermediate and Circuit Courts of Kanawha County.

I am authorized to say that Judge Fox concurs in this dissent.

KENNA, PRESIDENT, concurring:

In my opinion the provisions of Code, 61-10-11, under which Hudson was indicted are of doubtful validity for the reason that they do not describe the offense with

sufficient certainty to set up a standard or criterion, but leave the application of a criminal statute largely in the hands of the separate courts and juries. See the discussion in *State v. Lantz,* 90 W. Va. 738, 11 S. E. 766, 26 A. L. R. 894. The statute makes it unlawful to knowingly permit a lottery in a house "under his control". I realize that the quoted phrase would necessarily include the owner or a tenant, dependent upon circumstances. See *Commonwealth v. Wentworth,* 146 Mass. 36, 15 N. E. 138. But how much further the extension of that language might be attempted it is difficult to say. This case is an illustration, to my mind, of the reason for requiring criminal statutes to be clear and explicit, and doubtful meanings resolved in favor of the accused.

Conceding the validity of the statute, however, in my opinion the indictment under consideration does not fall within the general rule that an indictment for a statutory offense that substantially follows the wording of the statute is sufficient. That rule is subject to a well recognized exception where the language of the statute is general, or generic, as it seems to me it undoubtedly is in an all inclusive statute such as this. In such instances the indictment must reduce the general language of the statute to distinct averments so as to inform the accused of the actual conduct that he must defend. *State v. Simmons,* 99 W. Va. 702, 129 S. E. 757. The fact that the language of the provision under consideration is general could not be more clearly admitted than it is by the majority's discussion of the comprehensive meaning of the word "lottery". In the drafting of the indictment the grand jury departed from the language of the statute by describing the location of the lottery as *"premises* under his control" instead of *"house* under his control", as the statute reads. The second, third, fourth and fifth counts of the indictment charge that the offense was committed in "premises under *his* control", there having been three accused, one of whom was a woman. An indictment should charge the offense so specifically that a final judgment can be pleaded in bar of a subsequent

prosecution for the same offense. For these reasons, a general discussion of which is readily available in the cited case and references there found, I am of the opinion that the demurrer to the indictment should have been sustained.

A bill of particulars cannot cure a bad indictment, but assuming the indictment under consideration to be good, we are then confronted by the accused's demand for a bill of particulars and with the opinion's discussion of this question I disagree also. I do not believe that the indictment, which does not attempt to locate "the premises" except as being in Kanawha County, without a bill of particulars, furnished the accused with the information necessary to acquaint him with the conduct charged to have been criminal and enable him to defend against that charge. Granting that a bill of particulars is subject to the reviewable discretion of a trial court, I think that here it would have been an abuse of discretion to deny it. It is conceivable that a person may have in Kanawha County any number of premises under his control. It might be that the accused could have been operating a lottery in more than one premise under his control in Kanawha County. This being an indictment against three persons, the chances of different circumstances confronting those on trial were of course trebled. Under all of these circumstances I think that the trial court very properly and necessarily granted the accused's demand for a bill of particulars that restricted the State's proof to premises known as the Plaza Cigar Store at 121 Summers Street.

I concur in the result reached by the majority and with the principles of law stated in the syllabi. In my opinion those principles have been misapplied to the extent that I have attempted to indicate.