## PEOPLE *v.* LIPPERT.

1. GAMING—PUNCHBOARDS.

Punchboards whose only practicable use was for gambling purposes were gambling devices *per se.*

2. SAME—PRESENCE OF PUNCHBOARDS.

Presence of punchboards, usable only for gambling purposes, on premises of manufacturer and seller thereof constituted a violation of provision of penal code relative to keeping apparatus used for gaming or gambling (Act No. 328, § 302, Pub. Acts 1931).

3. CRIMINAL LAW—GAMING—PUNCHBOARDS—QUESTION OF FACT—INSTRUCTIONS.

In prosecution for violation of statute relative to keeping gambling apparatus, question as to whether punchboards received in evidence could be used for anything else except gambling and whether they could be used only for gambling was an issue of fact properly submitted to jury under appropriate instructions (Act No. 328, § 302, Pub. Acts 1931).

4. SAME—GAMING—PUNCHBOARDS—EVIDENCE.

Testimony in prosecution for violation of statute relative to keeping gambling apparatus supported verdict beyond a reasonable doubt on issue of fact as to whether punchboards were usable for anything else except gambling or usable only for gambling (Act No. 328, § 302, Pub. Acts 1931).

5. SAME—BRIEF SEPARATION OF JURY—NEW TRIAL—DISCRETION OF COURT.

Denial of motion for new trial because during a recess in jury's deliberations opportunity had been afforded two of the jurors in a prosecution for a misdemeanor to come into contact with others in that officer in charge of jury had permitted them to go to a drinking fountain in the hall for a drink of water and to the men's rest room did not constitute an abuse of discretion where a full investigation was made by the court and it

was ascertained they had spoken to no one and no one had spoken to them, occurrence took place about an hour after case was left to jury and sole impropriety consisted in failing to obtain court's permission for separation of the jury (3 Comp. Laws 1929, § 17309).

WIEST, J., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted January 14, 1943. (Docket No. 101, Calendar No. 42,160.) Decided April 6, 1943.

Wayne Lippert was convicted of permitting gambling apparatus on premises occupied and controlled by him. Affirmed.

*John J. Hogue* and *Paul B. Mayrand* (*John R. Watkins,* of counsel), for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Richard V. Nahabedian* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

BOYLES, C. J.    This case involves the construction of Act No. 328, § 302, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–302, Stat. Ann. § 28.534) (Michigan penal code), which reads as follows:

"*Any person, or his agent or employee who shall,* directly or indirectly, keep or occupy or assist in keeping or occupying any common gambling house or any building or place where gaming is permitted or suffered or who shall *suffer or permit on any premises owned, occupied or controlled by him any apparatus used for gaming or gambling* or who shall use such apparatus for gaming or gambling in any place within the State of Michigan, shall be guilty of a misdemeanor." ·

The precise question is, whether defendant was guilty of a violation of that part of the above statute which has been indicated by us in italics. The facts are not in dispute. On July 23, 1941, defendant was manufacturing and selling punchboards in the city of Dearborn, Wayne county, Michigan. He was arrested, informed against, tried by jury, and found guilty of a violation of the above section of the penal code. It was conceded that the defendant was an upright citizen, a respected member of the community, had been advised by counsel that manufacture and possession of punchboards was not a violation of the law; and for these announced reasons the court after verdict suspended sentence.

Defendant appeals for the purpose of obtaining a construction of the statute. He claims that the mere possession of the punchboards on his premises was not a violation of the statute—that it must be shown that they were actually used on the premises for gambling purposes. The punchboards were received as exhibits, and their manner of use explained. The court charged the jury as follows:

"It is up to the jury to determine from the nature of the exhibits whether or not these exhibits are apparatus used in gambling. In other words, can these punchboards be used for anything else except for gambling. If the jury finds that the punchboards can be used only for gambling, then Mr. Lippert would be guilty of violating the law and the officers would have a perfect right to bring this charge and to seize the punchboards. There is no question in my mind that the law prohibits, and counsel all agree, the selling of chances on punchboards. That is against the law and the police pick them up and arrest the owners whenever they find them selling them.

"There is no question in my mind that the legislature intended that the manufacture of implements

that could be used only for gambling is also violating this section of the statute. If the jury determines that the prosecution has proven beyond a reasonable doubt that these punchboards can be used only for gambling and for no other purpose, and they were seized from the possession of Mr. Lippert, doing business as the Gold Star Manufacturing Company, then I think that that would constitute a violation of the law.''

The defendant admitted that punchboards were manufactured and sold by him in his building, as alleged. There was no proof of any gaming or gambling being carried on in or on the premises. Nor did the people claim that any punchboards were actually used at any time on the premises for gaming or gambling purposes. The substance of the people's claim was that the punchboards were gaming or gambling apparatus *per se.* The substance of the defendant's claim as stated in his brief is as follows:

''It is apparent that the statute refers to apparatus and equipment actually used for gaming or gambling on property controlled by a defendant, not the mere possession by the defendant of apparatus or equipment which may possibly under certain circumstances be so used.''

However, this is not a fair statement of the precise question before us. The people did not contend, nor did the court so instruct the jury, that mere possession of apparatus or equipment ''which may possibly under certain circumstances'' be used for gambling was unlawful. For example, we may readily conceive that copper pennies ''may possibly under certain circumstances'' be used for gambling, *i.e.,* ''matching pennies.'' An ordinary table, playing cards, a blank piece of paper, may ''under cer-

tain circumstances'' be used for gambling. Yet no one would seriously contend that United States coins, an ordinary kitchen table, playing cards, plain pieces of paper, constitute gambling apparatus *per se*, the mere possession of which would be unlawful. The possession of such simple apparatus, or its use in playing games for amusement only, when not used for gambling, is no more unlawful than would be the possession of a football merely because there might be gambling on the result of a football game. The narrower issue in the instant case is, whether the punchboards were possessed for any other use except gambling, whether they were intended for use only for that purpose; and, if so, was mere possession thereof by the defendant, on the premises owned, occupied or controlled by him, a violation of the above section of the penal code.

Testimony explaining the make-up and manner of use of the punchboards was received. A witness testified:

''On these punch boards you take a punch for five cents and the winning number pays you a dollar. It says 'lucky buck, win one dollar.' If you get three stars or three bells on this type of board you win that.

''Q. In other words you get a dollar for a nickel, is that it?

''A. Yes.

''Q. Does that always appear in the operation of the punch board?

''A. If you are lucky.''

A witness, who purchased from the defendant some punchboards that were displayed for sale on the premises, described them as follows:

''I paid $8.50 for the combination of three boards. One a small punch board, Bucks Jack Pot. It cost a nickel a punch. It pays up to three dollars. One

a large punch board called Cherries. Cost a nickel to play and pays up to $15. The third one Sand Lot costs five cents and pays 50 cents and one dollar. You can win eight. There are 1,000 holes at five cents a punch. It pays 8 seals; four at 50 cents and four at one dollar. The percentage in Cherries is $27.80. The percentage on the small board is $9. Mr. Lippert explained the working of these boards. The combinations are like on a slot machine. He explained to me that the money that I made from the small board would pay for the two large boards. He did not explain what the percentage of profit was."

A witness who sold punchboards for the defendant described them as follows:

"All the boards I sold were based on the theory that a person paid a certain price for a punch. If he punched a certain combination it would entitle him to a prize. Some in cash. At the top of each board it told what it cost to play and what you could win. All the boards showed a per cent.

"I sold punch boards similar to those shown in the people's exhibits of punch boards seized in the raid. That included Bucks Jack Pot, Lucky Bucks, Big Money, Barrel of Jack, Jar of Gold, Cherries, Sand Lot, and 16 other varieties."

This witness further testified that the defendant manufactured the punchboards, put the prize winners in the holes of the boards, and in that way had control over what prizes would be paid out of each board; that the boards stated what the prizes were, and in that way the manufacturer determined the amount of profit and the mechanical means of determining that profit.

The record fully establishes that the punchboards were intended only to be used for gambling purposes and had no other practical use. It might be

conceived that these punchboards might be used to kindle a fire or as playthings for the baby; however, the only sensible conclusion must be that these punchboards were for gambling use only, and were gambling devices *per se.*

The defendant contends that under this statute a conviction cannot stand unless it was proven that the punchboards were in use on the premises for gambling. We need not go outside the wording of Act No. 328, § 302, Pub. Acts 1931, to determine the legislative intent. It provides that any person shall be guilty of a misdemeanor (1) who keeps or occupies a gambling house or building where gambling is permitted; or (2) who suffers or permits on any premises owned, occupied or controlled by him any apparatus used for gaming or gambling; or (3) one who *shall use* such apparatus for gaming or gambling in any place in this State. Defendant is not charged with using or permitting the punchboards to be used on his premises for gambling; he is charged under the second of the above three prohibited doings with having suffered or permitted on premises occupied by him apparatus used for gaming or gambling. Defendant would construe "apparatus used for gaming or gambling" to mean used *on said premises* for gaming or gambling, or *then and there being used* for gaming or gambling. We believe that the proper construction of the statute must be that if the punchboards could be used for nothing else except gambling, that if they were intended to be used solely for gambling purposes and had no other reasonable use except for gambling, the defendant, who knowingly suffered or permitted them on premises owned and occupied by him, would be guilty of a misdemeanor. The question as to whether the punchboards that were received in evidence could be used for anything else except gam-

bling, and whether they could be used only for gambling, was an issue of fact that was submitted to the jury under appropriate instructions by the trial judge. The testimony supports the verdict on that issue of fact beyond reasonable doubt. Defendant's motion to quash the information was properly denied.

Defendant also seeks reversal on the ground of misconduct of the jury during its deliberations. In support of a motion for new trial one of the attorneys for defendant made affidavit that after the case was submitted to the jury two jurors were seen walking outside the jury room, unescorted by the officer in charge of the jury. There was no showing that anyone talked with these jurors. Subsequently they were called before the court for examination, a full investigation made by the court, and their testimony is in the record. During a recess in the jury's deliberations they were allowed to go to a drinking fountain in the hall for a drink of water, and to the men's rest room; the court officer came and told them to hurry up, they rejoined the jurors at the door of the jury room and went into the jury room together. They had spoken to no one and no one spoke to them. This occurred after about an hour in the deliberations, when some jurors asked the officer in charge for permission to go to the washroom. The record before us does not show whether the jurors had access to a toilet or washroom, or a drinking fountain, inside of the jury room. The practice here complained of must be condemned, because it offers an opportunity for contact between jurors and others. However, the trial court, after a careful investigation and examination, concluded that the verdict was in nowise influenced or affected by the occurrence. Had the court been previously advised of the jurors' wishes or

necessity, and so permitted, the incident could not have been questioned. Section 16 of chapter 8 of the code of criminal procedure (3 Comp. Laws 1929, § 17309 [Stat. Ann. § 28.1039]), applying to jurors sworn to try criminal actions in courts of record, among other things, provides:

"After the jurors retire to consider their verdict, the court may permit the jurors to separate temporarily, whenever in his judgment such a separation is deemed proper."

The impropriety consisted in failing to obtain the court's permission for the separation of the jury. The court did not abuse its discretion in denying the motion for new trial on this asserted ground.

Judgment affirmed.

CHANDLER, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, C. J.

WIEST, J. (*dissenting*). I consider the opinion of the Chief Justice a construction of the act to the point of judicial legislation.

The statute quoted in the opinion of my Brother does not penalize having punchboards except upon premises owned, occupied or controlled by the possessor of the apparatus *used* for gaming or gambling, or shall use such apparatus for gaming or gambling in any place within the State of Michigan. The statute is short of penalizing the charge made and the conviction should be reversed and defendant discharged.