### 31969.   DAVIS *v.* THE STATE.

DECIDED JUNE 9, 1948.   REHEARING DENIED JULY 28, 1948.

*Foley & Chappell, Thomas W. Starlin, Joseph S. Ray,* for plaintiff in error.

*J. R. Thompson, Solicitor,* contra.

MacINTYRE, P. J. The defendant, through the 'excellently argued and neatly prepared briefs of his counsel, contends that his forty-six machines here in question never paid off automatically, never delivered a prize, and in fact, could not do either because they did not have the machinery or mechanism necessary to do that act or operation; that all of which foregoing means that they were not "gambling devices per se;" that a machine, which is not a gambling device per se, becomes an instrument of crime only when put to a criminal use; and that, in addition to there being no evidence that the machines here were put to a criminal use, there was no proof that a prize would be given in connection with their operation.

The deputy sheriff, Dunford, testified that he was generally familiar with the general operation of this machine; that, from his general information and from his position as deputy sheriff, he knew that a machine of this type could be operated so that the person playing it, when he won a prize by the playing thereof, would be paid off in either one of two ways: (1) the machine itself could pay off the prize money by dropping it through the pay-off slot into an outside opening or box on the machine, which box is called the "cashier box," thus delivering the prize money to the player without the aid of other instrumentalities or persons in paying off, or (2) if the pay-off slot through which the prize money is dropped into the mechanical cashier is taken off, the machine itself could not pay off the prize but, in such case, it would take some other instrumentality, or some person, such as the bartender or cashier, to do the paying off; and

that: "I said I have seen the same type of machine played at other places. When the pay-off mechanism is not arranged so that it will pay off through a slot, then when you play the machine and it stops at the first winning number, if you have a nickel on that winning number you have to hold the machine as it is and call your counter man, or whoever pays off, and let him come in and pay off. It is generally operated with a man personally who pays off. That is the only way I have ever seen it operated. The only way I have seen it operate is where a man pays—where somebody plays a nickel in there and when it stops at a certain number he calls the man and the man comes over and looks at the number and pays off."

The sheriff testified in part that this machine was one of those found in the warehouse and that the others were similar; that all the machine was good for was gambling; and on cross-examination, he testified in part as follows: "One in particular I remember from the group I seized was played in my presence. I selected that machine and it was plugged in with electricity. I don't remember whether it had paper on it or not. Some of them has paper and some doesn't. Several nickels were placed in there and this lever pulled. It didn't pay off. It was played a number of times in my presence and at no time did it pay off." And when he was asked the question: "As a matter of fact, it couldn't pay off?" he replied, "It didn't pay off."

We think that this quoted testimony when considered as a whole in connection with the various parts thereof, particularly that of Deputy Sheriff Dunford, does not contradict the part of the testimony of both the sheriff and the deputy sheriff in which they stated that the machine was a gambling device. Its effect is merely to say that the machine, when used in the second of the two methods above stated, did not and could not deliver the prize money, which had already been won by the playing of the machine itself, because the conduit through which the prize money would have otherwise traveled to the winner was removed or was stopped up with paper. Such quoted testimony left uncontradicted the testimony of the deputy sheriff that, in the case of the machines which he had observed in operation, the delivery of the prize money was generally made by this second method above stated—that is, through the hands of a

person; nor did it contradict the testimony of either the sheriff or the deputy sheriff, who were the only witnesses in the case, that it was an apparatus known as a horse-race machine which is operated by depositing money in the slot or slots therein, and then pulling the lever; that thereupon the machine begins to operate and that the operation culminates in the registering of the amount of prize money, if any, which is awarded to the player by the playing of the machine itself. The prize money having been won by the playing of the machine, the game of chance itself is over; and the delivery of the money to the winner, whether by a natural person or by a mechanical device which is a part of the machine itself, does not change the fact that the machine is an apparatus or device "by which a person depositing money therein may, by chance, get directly or indirectly money or articles of value worth either more or less than the money deposited . . and can not be treated as one kept only for amusement." *Elder* v. *Camp*, 193 *Ga.* 320, 321 (18 S. E. 2d, 622). The removal of that part of the machine called a "pay-off slot," or the stopping-up of the slot with paper, did not change or destroy the character of the machine from that in which it was originally constructed, namely a gambling device. It falls within the purview of Code § 26-6502, which is: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." The following words in *Elder* v. *Camp*, supra, are also applicable and appropriate here: "Under the quoted terms of the statute, it is made unlawful merely to 'keep' such a 'device' for the hazarding of any money,' and it is not necessary to show a further violation by maintaining, employing, or carrying on such a 'scheme or device' by active operation." The prima facie evidence of the guilt of such owner or operator in possession is further emphasized in the same case where it is said that: "The keeping of [such an apparatus or device] of the character described being unlawful, ordinarily and prima facie, where an owner or operator is found in possession of such a machine, the apparatus is contraband," and is a thing outlawed by our statute and subject to forfeiture and destruction upon a lawful seizure by the officers. See also *People* v. *Belsky*, 177 Misc. 125 (29 N. Y.

Supp. 2d, 535). We think that it was unlawful to "keep" such forty-six gambling devices irrespective of the particular purpose for which the defendant kept all of them or any one of them—whether for storage in the warehouse only or otherwise.

The facts of this case differentiate it from those of *Williams* v. *State,* 65 *Ga. App.* 843 (16 S. E. 2d, 769), and *Childs* v. *State,* 70 *Ga. App.* 99 (27 S. E. 2d, 470), cited by counsel for the plaintiff in error in that in each of those cases the machines in question were of the type commonly called "pin-ball machines." In the operation of that type machine the player is given five balls with which to exercise his *skill* in attaining a high score, and the element of skill involved offers an incentive to persons to play the machines even though no prize be offered; whereas in the operation of the machines here in issue there is no element of skill involved. A person would not insert a nickel in the machines merely to see the lights flash or, as a matter of curiosity, to ascertain upon which picture of a horse the machine would permit the spinning light to stop; and, as was stated by the sheriff and the deputy sheriff, the machines here are absolutely worthless except as a game of chance, thus becoming a "gambling device per se."

In the instant case, not only the evidence, but also the defendant's statement demanded the verdict rendered and a new trial will not be granted, even though the judge may have committed errors in refusing to grant a new trial on the remaining questions raised by the record. If the jury reached the only result which was legally possible in the case, the judgment of the trial court will not be reversed merely for the purpose of allowing the case to be heard again in order that the same result may be reached in a more technically correct manner. *Williams* v. *State,* 15 *Ga. App.* 311 (supra); *Thomas* v. *State,* 27 *Ga. App.* 38 (supra); *Frazier* v. *Swain,* 147 *Ga.* 654, 657 (supra).

*Judgment affirmed. Gardner and Townsend, JJ., concur.*