STATE OF IOWA, appellee, v. JOHN BOLAND, appellant.

## No. 47497.

(Reported in 41 N.W.2d 727)

MARCH 7, 1950.

REHEARING DENIED MAY 5, 1950.

David F. Loepp, of Sioux City, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Bernard A. Brown, County Attorney, for appellee.

OLIVER, J.—Officers of the Sioux City police department saw defendant carrying a suitcase and asked him what it contained. He said that was his affair and also that he was carrying it because the heat was on. He was taken to the police station where the suitcase and a fishing. tackle box belonging to him were opened. Among their contents were seventy-two decks of assorted playing cards, some of which were marked; ninety-two pairs of dice, some loaded, some in the process of being loaded and some called "tops and bottoms"; a miniature slot machine;

several miniature dice cages; various tools, implements and materials for loading dice and marking cards; and a mechanical device known as a "card snatcher."

Thereafter he was indicted, tried to a jury, convicted and sentenced for the crime of illegal possession of gambling devices in violation of section 726.5, Code of Iowa, 1946, which provides:

"Possession of gambling devices prohibited. No one shall, in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in possession or control any roulette wheel, klondyke table, poker table, punchboard, faro, or keno layouts or any other machines used for gambling, or any slot machine or device with an element of chance attending such operation."

A witness testified, and the backs of some of the packs of cards show, "a little mark which is almost invisible * * * which enables an expert in that to know what card the other player is holding." The witness testified also that dice are loaded by drilling out the spots and placing gold, platinum, mercury or quicksilver in the holes, sealing them shut and repainting the spots. Some of the dice were "dice known in the gambling trade as 'tops and bottoms'." The numbers on one of each pair of these dice were "6's and 4's" only. On the other dice the numbers were "5's and 2's" only "thus enabling the player to make 'passes' or his point without the danger of 'sevening out' or losing his bet."

"The card snatcher is a device which is strapped on both arms and runs around the neck and under the coat of a card player. The player using this device can pull or snatch a card by use of wire and strings, also under his coat sleeve. This is manipulated by strings and wires located in the opposite arm * * *. If it is desired to use a card attached to the snatcher and under the sleeve of the coat, movement of the body and arm on the opposite side can drop the card from the sleeve to the hand unbeknownst to opponents."

The witness testified marked cards and loaded dice are not ordinarily used for nongambling games. Defendant testified, "I * * * was manufacturing these marked cards and

loaded dice for sale. * * * I have made sales of marked cards and loaded dice to certain people, but I do not care to disclose their names."

I. Contending none of the articles in question was a gambling device per se, defendant assigns as error the refusal of the district court to direct a verdict in his favor on that ground. In State v. Rand, 238 Iowa 250, 260, 25 N.W.2d 800, 170 A. L. R. 289, defendant was convicted of keeping a gambling house contrary to the statute, now section 726.1, Code of Iowa, 1946. That statute contains the language "play at cards, dice," etc. The decision states customary gambling devices were found in operation and that the legislature recognized cards and dice as gambling devices.

Although the statute here in question does not list cards and dice as gambling devices and the record does not show their actual use as such, the case should be considered in the light of the legislative recognition that cards and dice are commonly used as gambling devices. State v. Rand, 238 Iowa 250, 260, 25 N.W.2d 800, 170 A. L. R. 289; Parker-Gordon Importing Co. v. Benakis, 213 Iowa 136, 143, 238 N.W. 611; State v. Doe, 227 Iowa 1215, 1222, 290 N.W. 518. That is not to say cards and dice are regarded as gambling devices under all circumstances. State v. Cowen, 231 Iowa 1117, 1128, 3 N.W.2d 176. Generally speaking, they may be used for lawful purposes.

A gambling device is any instrument adapted and designed to play any game of chance for money or other thing of value. City of St. Paul v. Stovall, 225 Minn. 309, 30 N.W.2d 638; City of Wichita v. Stevens, 167 Kan. 408, 207 P.2d 386, 390. Marked cards and loaded and rigged dice are designed and devised for the purpose of gambling. There was testimony they are not ordinarily used for nongambling games. One who sells articles designed for gambling only is deemed to know they are to be used for gambling. J. M. Brunswick & Balke Co. v. Valleau, 50 Iowa 120, 122, 32 Am. Rep. 119. As stated in 38 C. J. S., Gaming, section 78, page 133, "* * * the test is not whether the devices are capable of being used purely for amusement or nongambling purposes, but whether their reasonably intended use is for gambling." In People v. Lippert, 304 Mich. 685, 8 N.W.2d 880, a manufacturer of punchboards was

found guilty of having on his premises apparatus used for gambling. The decision states the record shows the punchboards were intended only to be used for gambling purposes and had no other practical use, and although other uses might be conceived the only sensible conclusion must be that they were for gambling use only, and were gambling devices per se.

Defendant contends dice and playing cards are not within the statutory language "any other machines used for gambling, or any slot machine or device with an element of chance attending such operation." Section 726.5, Code of 1946. His counsel argues this refers to an element of chance in the operation of the device itself, such as a slot machine, and does not apply when it is necessary for one to enter into an agreement or have an understanding with a second person in order to gamble with the equipment.

The word device refers to the tangible thing with which a game of chance is played as distinguished from the game itself. 24 Am. Jur., Gaming and Prize Contests, section 31, page 420. We have already pointed out that cards and dice are commonly used in gambling. When so used they are gambling devices. 24 Am. Jur., Gaming and Prize Contests, section 36, page 424; White v. State, 37 Ind. App. 95, 76 N.E. 554; State v. Rand, 238 Iowa 250, 25 N.W.2d 800, 170 A. L. R. 289.

Counsel's argument assumes that one who plays a slot machine gambles with the machine. We are unable to agree with this premise. The player gambles, not with the machine, but with its owner or operator. The latter holds out what amounts to an offer to gamble with anyone who places a proper coin in the machine. The deposit of the coin may be said to be an acceptance of the offer. Hence, there is in effect an agreement or understanding between the parties to gamble by means of the slot machine. The situation is the same whether the player puts his money in the machine or lays his chips in a square on the gaming table to wager against the house or bank on the throw of the dice or the turn of the cards by the player, the operator of the game, or another.

Aside from these considerations, the interpretation of the statute sought by defendant would limit its effect to mechanical or automatic devices. The language of the statute is broad.

State v. Wiley, 232 Iowa 443, 449, 3 N.W.2d 620. It comprehends all devices of the general character intended to be prohibited. Hence, it includes such devices as loaded dice and marked playing cards. An interpretation to the contrary would not accord with the express legislative intent.

It is our conclusion defendant was not entitled to a directed verdict upon the ground the record failed to show any of the articles in question was a gambling device per se. In view of this determination we need not consider whether the miniature slot machine, the miniature dice cages or the card snatcher were gambling devices.

II. Another ground of defendant's motion for directed verdict was based upon the dismissal by the municipal court of a proceeding to forfeit the articles in question. Defendant contends the judgment of the municipal court, from which no appeal was taken, was an adjudication that the articles were not gambling devices and that it constituted a bar to the prosecution of the criminal case.

In considering this assignment of error it should be noted that although the two cases stem from the same circumstances the criminal case is a different action than the forfeiture proceeding. The term "res judicata" frequently refers to: (1) the effect of a judgment as a bar to the prosecution of a second action upon the same claim, demand or cause of action, or (2) its effect to preclude the litigation of particular facts or issues in another action between the same parties on a different claim or cause of action. This is the phase of the doctrine involved in the case at bar. It has been referred to as estoppel by judgment or collateral estoppel. Kunkel v. Eastern Iowa L. & P. Co-op., 232 Iowa 649, 657, 658, 5 N.W.2d 899, and citations; 30 Am. Jur., 912, 923, 925, Judgments, sections 166, 179, 180, and Cumulative Supplement; Commissioner of Internal Revenue v. Sunnen, 333 U. S. 591, 597, 598, 68 S. Ct. 715, 92 L. Ed. 898.

The foregoing authorities, and authorities in general, hold that collateral estoppel may be applied only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. "To be available as an estoppel, the matter must necessarily have been decided;

it will not be enough that it may have been. * * * 'The inference must be necessary and irresistible, excluding all doubt.' * * * In short, it must appear that the particular matter was considered and passed on in the former suit, or the adjudication will not operate as a bar to a subsequent action." Matson v. Poncin, 152 Iowa 569, 572, 132 N.W. 970, 971, 38 L. R. A., N. S., 1020.

The record indicates that when defendant was first escorted to the police station the officers took possession of the articles here in question. A few days later an assistant county attorney filed an unsworn instrument entitled Petition for Forfeiture asking their forfeiture on the ground defendant's possession of them was contrary to the statutes. It may be noted this did not strictly comply with the provisions of chapter 751, Code of Iowa, 1946. Defendant filed answer denying the articles were gambling devices and making claim to them. Trial was had. The record book of the municipal court sets out the service, appearances, etc., and recites: "State's evidence introduced. State rests. Claimant's motion for dismissal of the petition is hereby sustained."

The court records do not show the motion to dismiss or the basis of the order dismissing the petition. Nor does anything in the record presented to this court indicate whether the municipal court dismissed the petition because it found the articles were not gambling devices or for some other reason. Therefore the estoppel relied upon by defendant was not established and the trial court properly overruled that ground of the motion for directed verdict.

III. Over defendant's objection the court permitted a witness for the State, on rebuttal, to testify defendant had once been seen gambling with cards at a café. Defendant assigns this as error. Defendant had testified he had worked at the café in question as a bartender, and also, "I have done some gambling like most people have, but never have attempted to make a living at it." In view of defendant's testimony we are satisfied the error, if any, was not sufficiently prejudicial to warrant reversal.—Affirmed.

All JUSTICES concur.