STATE OF IOWA, appellee, v. JOHN DOE and certain gambling devices and owners and operators of Howard's Grill, 3707 Sixth Avenue, Des Moines, appellants.

No. 47778.

(Reported in 46 N.W.2d 541)

MARCH 6, 1951.

C. S. Missildine, J. R. McManus, and Don Allen, all of Des Moines, for appellants.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Kent Emery, Assistant Attorney General, for appellee.

OLIVER, J.—A search warrant issued by Justice of the Peace Geo. E. Bidwell under chapter 751, Code of Iowa 1950, I. C. A., was directed to certain gambling devices described as pinball machines illegally possessed by persons unknown at Howard's Grill, 3707 Sixth Avenue, Des Moines. The officers seized one Bally Champion one-ball machine No. 7368. W. H. Farrell appeared and contested the forfeiture, alleging the machine was not a gambling device and he was entitled to its possession. Upon hearing, judgment of forfeiture was rendered by the Justice of the Peace. The case was appealed to the district court and trial there resulted in judgment of forfeiture and this appeal by claimant.

The device is a one-ball (pinball) machine which simulates betting on horse races. It is contained in a cabinet or table with a backboard. The cabinet or table is about four feet high, is mounted upon four legs, and slopes up from its front end to the backboard at its rear end. At the front end, where the player stands, are the slot in which the money is deposited, two plungers and three push buttons, one of which buttons is marked "Replay". There is also a metallic opening like a pay-off slot. The table has a glass top, under which is the playing field upon

which the ball rolls. The playing field is obstructed by various bumpers, springs, pins, etc. It is divided into four sections named Purse, Show, Place and Win. In each of these sections is a series of holes numbered 1 to 7.

The backboard is a vertical, box-like structure with a glass front. It rises several feet above the table. In it are two meters. One meter has three spaces for figures. It registered 00. The other meter registered 22. On the left side of the backboard are the words and figures:

| Win   | 8 | 12 | 16 | 24 | 32 | 48 | 64 | 96 | 160 | 160 |
|-------|---|----|----|----|----|----|----|----|-----|-----|
| Place | 5 | 8  | 12 | 16 | 24 | 32 | 48 | 64 | 96  | 128 |
| Show  | 3 | 5  | 8  | 12 | 16 | 24 | 32 | 48 | 64  | 96  |
| Purse | 3 | 3  | 5  | 8  | 12 | 16 | 24 | 32 | 48  | 64  |

Across the lower part of the backboard are the large figures 1, 2, 3, 4, 5, 6, 7. These apparently represent horses. Among other things on the backboard are:

"Purse, Scores, Win, Odds—All selections lighted—Show, Scores, Win, Odds. Wild, Purse, Show, Place, Win. Winning ball in purse, scores double—Odds advanced. Winning ball in show scores double."

The foregoing description omits many details. The machine is ornamented with pictures of race horses, etc. It is electrically operated.

The game is started by. a nickel dropped into the coin slot. This causes the machine to select and light a number (horse) from 1 to 7 on the backboard and also to light the left column of figures on the backboard showing the figures 8, 5, 3, 3, opposite Win, Place, Show and Purse, respectively. At the same time a metal ball drops from a hole in the playing field and rolls into a receptacle from which the operation of a plunger will turn it into a channel on the right side of the playing field and directly in front of another plunger by which it may be propelled through the channel to the higher end of the playing field. The ball is deflected by various obstacles on the playing field, down which it rolls until it falls into one of the holes.

If the number of this hole corresponds to the number (horse) lighted on the backboard the player scores points. If this hole is in the Win section of the playing field the so-called

odds are 8 to 1, in the Place section 5 to 1, in the Show section 3 to 1, and in the Purse section 3 to 1. Hence, the score for this game would be either 8, 5 or 3 points. If the number of the hole is not the same as the lighted number no points are scored. In either event the game is ended. The machine contains one ball only.

The player may start another game by placing another nickel in the slot. This will cause the machine to show the same odds as before and the same or a different number (horse). Each game or race is short and ends when the ball has been propelled to the playing field and drops into a hole.

The machine was exhibited in the district court. Nickels deposited in it at first resulted only in the appearance of the word "Tilt" on the backboard, indicating the electric parts of the machine would not operate because it was or had been tilted. A technician familiar with such machines appeared as a witness and placed the machine in working order by adjusting the tilt bobber. He testified the tilt protected the machine by stopping the functioning of the electrical apparatus when the machine was shaken or bounced and that a bump in transporting the machine might affect the tilt mechanism. He testified also this machine was very complicated; that it contained many wires and other equipment and had been in manufacture for eight or ten months only.

The machine was then operated by another witness. His nickel in the slot caused to be lighted on the backboard numbers (horses) 6 and 7 and the left column of figures which fixes the points or the odds at 8, 5, 3, and 3. In that game the ball dropped into a hole numbered 5.

Next the witness placed five nickels in the slot without propelling the ball from the channel. When the first nickel was deposited it lighted the left column of figures on the backboard fixing the points or odds at 8, 5, 3, and 3. Each nickel subsequently deposited advanced the odds by moving the light to the column of figures immediately to the right. After the deposit of the fifth nickel the lighted column showed 32 for Win, 24 for Place, 16 for Show and 12 for Purse. At that time the lighted number (horse) was 2. The witness then pulled and released the

plunger driving the ball upon the playing field where it dropped into a number 3 hole, ending that game.

The columns of figures on the backboard, hereinbefore set out, indicate the points scored in one game or race may be advanced to 160, 128, 96, and 64, apparently by a deposit of ten nickels. However, the game would still be limited to one roll of the ball.

■■■■ I. Appellant complains of the overruling of his objections that the one-ball machine and evidence relative to it were incompetent because the machine was not properly identified or shown to be in the same condition at the trial as when seized under the search warrant. There are a number of answers to these complaints. This is not a criminal prosecution against appellant but an action in rem against the device. State v. Certain Lottery Tickets, 214 Iowa 158, 241 N.W. 421. Its formal introduction in evidence would have been unnecessary, because appellant's answer admitted the seizure of the machine described in the return. State v. John Doe, 227 Iowa 1215, 1220, 290 N.W. 518. Nor is it essential that a gambling device be in operation or in operating condition when seized or condemned. The statute, section 726.5, forbids possession of a gambling device for any purpose except under proceeding to destroy it. See State v. Boland, 241 Iowa 770, 41 N.W.2d 727; People v. Lippert, 304 Mich. 685, 8 N.W.2d 880; Davis v. State, 77 Ga. App. 541, 49 S.E.2d 173. Nor is the State required to negative this exception. State v. DeMarce, 237 Iowa 648, 23 N.W.2d 441.

Furthermore, one of the deputy sheriffs who executed the search warrant testified they labeled the machine, marked it on the front, back and top, it was removed by a transfer company, was placed in the garage of the county jail to which the jailer had the keys, was hauled in a truck to the courthouse for the hearing, the labels and its general appearance were the same as when they seized it.

The technician called as a witness found the machine was locked and could not be opened. He secured an electric drill and, over appellant's objections, drilled the lock off and opened, examined and adjusted the machine, all in open court. The only adjustment required was to the tilt bobber which he testified might have been affected by a bump in transportation. He cor-

rected this condition by loosening a thumbscrew, and thereupon the machine functioned.

We hold the overruling of the objections in question did not constitute error.

■ II. Appellant offered no evidence in the trial court. However, his counsel contend the one-ball machine is for amusement only. Section 726.5 of the Code forbids the possession of gambling devices. State v. Boland, 241 Iowa 770, 773, 41 N.W.2d 727, 729, states: "A gambling device is any instrument adapted and designed to play any game of chance for money or other thing of value."

The decision quotes with approval a statement in 38 C. J. S. 133, Gaming, section 78: "* * * the test is not whether the devices are capable of being used purely for amusement or nongambling purposes, but whether their reasonably intended use is for gambling."

■ Various decisions have referred to the ingenuity exercised in the invention of devices designed to circumvent laws for the suppression of gambling and have pointed out that the courts have not allowed such fruits of inventive genius to accomplish their design. The courts, generally, look behind the name and style of the device and examine the substance of the game, under whatever guise it is conducted. State v. Wiley, 232 Iowa 443, 449, 3 N.W.2d 620, 624. It is well-known machines of the general type of the one at bar may be found in various places of business to which the public is invited, that their purpose is profit and that some of them have been gambling devices.

■ The question here is whether this machine is adapted and designed for gambling or is for amusement only. The player pays a nickel, the device shows the number (horse) selected for him and the standard odds, and releases the ball for him. He operates the plunger which propels the ball to the playing field upon which it rolls until it drops into a hole. Were he playing for amusement only it is apparent a substantial part, if not practically all, of his brief amusement would be playing the one ball furnished and watching it roll.

However, the machine is so constructed that the player need not receive one play for each nickel deposited. He may pay from one to ten nickels for one ball. It is obvious a one-nickel

game would furnish substantially the same amusement as a ten-nickel game. Practically the only thing secured for the extra nickels is advanced odds and perhaps a number (horse) or numbers deemed more likely to win. Aside from the possible advantage in the number (horse) and percentage of odds resulting from additional deposits, their only effect, is to increase the stakes—the player pays more money per game and if the ball drops into a winning hole it scores more points. Hence, the player pays extra money for the chance of scoring extra points. It follows that these points must have a value bearing some relation to the money paid for the chance of securing them.

It is stated in People v. Gravenhorst, 32 N. Y. S.2d 760, 776:

"He would be a credulous person indeed, who could believe that the customers playing for nothing but points, expected only amusement, and were not actuated by the belief they could use them to obtain money or other things of value."

So in the case at bar the only reasonable conclusion to be reached from the "extra payments, extra points" feature of the machine is that points scored may be used to obtain money or other thing of value. This supports the findings of the trial court that the instrument was adapted and designed to play a game of chance for money or other thing of value and that its reasonably intended use was for gambling. It follows that the judgment of forfeiture should be affirmed.

■ III. The one-ball machine was brought into the courtroom of this court and was operated by an assistant attorney general during the oral arguments. At the conclusion of the arguments the machine was left in the courtroom for inspection and demonstration by the court. This investigation disclosed the machine automatically gives a free game for each point scored. One of the meters keeps a constant account of and shows the net number of points credited to the player. The free-game feature, which, the record indicates, was not shown in the trial court, in and of itself would stamp the machine as a gambling device. State v. Wiley, 232 Iowa 443, 3 N.W.2d 620.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.