STATE OF WEST VIRGINIA

*v.*

JOHN WASSICK

(No. 13067)

Submitted May 2, 1972.        Decided June 27, 1972.

Rehearing Denied September 22, 1972.

*William A. Moreland, Robert A. Yahn,* for plaintiff in error.

*Williams, Connolly & Califano, Paul R. Connolly, Brendan V. Sullivan, Jr., William T. O'Farrell, Martin M. Nelson, Francis E. Sweet,* for amicus curiae.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, Richard E. Hardison,* Assistant Attorneys General, for defendant in error.

BERRY, JUDGE:

This is an appeal by John Wassick, hereinafter referred to as defendant, from a final judgment of the Circuit Court of Monongalia County which sentenced him to one year in jail and a fine of $1000 after he had been found guilty by a jury of violating Code, 61-10-11, as amended, which prohibits any person from setting up, promoting, or managing a lottery for money or any other thing of value. The defendant's petition for a writ of error and supersedeas was granted by this Court on March 8, 1971 and the case was submitted for decision on May 2, 1972 on the arguments and briefs of the parties as well as an amicus curiae brief on behalf of the Bally Manufacturing Company.

The defendant was the owner of a multiple-coin pinball machine which was located in a tavern known as "Jean and John's Place" in Morgantown. In March, 1969 an undercover Morgantown police officer received a "payoff" of $2.00 from Jean Whitehead, the owner of the tavern, after the officer registered a number of "free games" on the machine. The officer obtained a warrant and Jean Whitehead subsequently was fined $209.75 by a justice of the peace.

The defendant was indicted by the Grand Jury of the Circuit Court of Monongalia County for violation of the lottery statute, Code, 61-10-11, as amended. In the first count, the indictment alleged, following the language of the statute, that the defendant unlawfully did set up and promote and was concerned in interest in managing a lottery for money and other things of value by placing a multiple-coin pinball machine in a business establishment, and in the second count that he did knowingly and unlawfully promote a lottery for money and other things of value by placing a multiple-coin pinball machine in a business establishment upon premises not his own.

The defendant, who was a pinball machine distributor in Monongalia County, contends that ownership of a

multiple-coin pinball machine which does not have any built-in pay-out mechanism does not constitute a lottery per se, and filed a "Motion to Quash" the indictment on the grounds that there was no statute designating the pinball machine as a lottery. The trial court overruled the motion to quash the indictment.

The pinball machine involved in this case has an inclined horizontal playing field under glass with 25 numbered holes and one "return ball" hole at the lower end of the machine. The playing field also has numerous pegs, bumpers and springs which affect the course of the ball as it proceeds down the playing field but the machine has no "flippers" which allow the player the opportunity to keep the ball in play. The object of the player is to light up 3, 4 or 5 numbers in a row. The machine has a multiple-coin feature which means that the number of free games that can be won increases in proportion to the number of nickels which the player is willing to insert into the machine for each game. Although a player can receive "extra balls" after he has shot all five balls onto the playing field if he inserts a sufficient number of additional nickels, the player is normally limited to five balls. The machine also has a "tilt" mechanism which voids the game in progress if the machine is shoved or shaken too hard by the player attempting to manipulate the course of the ball. "Free games" are recorded on a meter visible to the player. In addition to this meter, there are two other meters on the inside of the machine which are not visible to the player. One records the total number of free games won and the other records the number of free games which are cancelled by a "knockdown switch" or "button" which removes the number of free games won on the machine recorded on the meter visible to the player.

Under the agreement between the tavern keeper and the distributor, or owner of the machine, the cost of the license for the machine and the profits from the machine are divided equally, and the distributor or owner of the

machine installs and provides maintenance for the machine.

During the trial of the case the state endeavored to prove that the three necessary elements which constitute a lottery, namely, consideration, chance and prize, were inherently present in the multiple-coin pinball machine involved in this case. A special agent from the Federal Bureau of Investigation laboratory in Washington, D.C. testified for the state that he was an expert in the mechanics and operation of this particular type of pinball machine, and that he had shot approximately 5,000 balls down each side of the machine and had charted the holes in which the balls had come to rest. He stated that although he had not tried to manipulate the machine in any way to affect the course of the ball on the playing field, he felt that the machine was designed in such a way that skill played a very little part in the outcome of the game.

The justice of the peace who fined the owner of the tavern testified on behalf of the state, over the objection of defense counsel, that the defendant paid the fine of Jean Kegley, who was formerly known as Jean Whitehead. The defendant's counsel contends that it was prejudicial error to allow evidence to be introduced, over his objection, concerning the "payoff" to the undercover officer, the conviction of the tavern owner, and testimony that the defendant paid the fine for her. The trial court allowed the jury to consider all of this evidence. Jean Kegley, the tavern owner, testified for the defense that the defendant had advanced her the money with which to pay the fine but that she had subsequently reimbursed him.

The defendant has listed eleven assignments of error in his brief but they can be consolidated into four categories for the proper disposition of this case. The main assignments are (1) that the machine is not a lottery per se, (2) that improper evidence was introduced with regard to the "payoff" and the conviction of the tavern owner for

making the "payoff", (3) the giving of an instruction that "free plays" constitute a prize or things of value, and, (4) the giving of an instruction that the licensing of the machine by the State of West Virginia and the City of Morgantown was immaterial as to whether it was a lottery or not.

The controlling question in this case is whether or not "free plays" on the machine constitute a prize. The evidence is overwhelming and apparently conceded that the other elements that constitute a lottery are present in the use of the machine involved, that is, chance is predominant over skill in the use of the machine and that the use of nickels to play the machine constitutes consideration. Under the lottery statute in this state the prize must be "money or other thing of value". There is a split of authority in this country as to whether "free plays" on a pinball machine are things of value constituting a prize. However, the weight of authority is that a 'free play" on a pinball machine such as is involved in the case at bar is a thing of value and constitutes a prize which makes the machine a lottery per se. Annot., 89 A.L.R.2d 815, 822, 823, 839. "Free plays" are not in themselves money, although they often are converted into money, especially on machines like the one in the instant case and the prevailing view is that they are things of value. 89 A.L.R.2d 815, 839.

The defendant relies on an opinion of the Attorney General of this State, published in 1962, indicating that the lottery statute was a penal law and must be strictly construed and that he was of the opinion that the operation of a single or multiple-coin pinball machine did not constitute a violation of the lottery statute per se. Opinions of the Attorney General are not considered as precedent to be followed by this Court. *State v. Conley*, 118 W.Va. 508, 190 S.E. 908. See *McKee v. Foster*, (Ore.), 347 P.2d 585. The indication in the Attorney General's opinion that the lottery statute of this state must be strictly construed is not the law in this state. Code, 61-10-14, as amended, requires that all laws for

suppressing lotteries be construed as remedial and therefore are liberally construed. *State v. Matthews,* 117 W.Va. 97, 184 S.E. 665.

Most of the laws in the various states dealing with gambling devices are in general terms and many were enacted before modern pinball machines came into existence. In all cases where it was actually shown that the machines were used for betting ·or "payoffs" they were held to be gaming devices but in many cases multiple-coin pinball machines like the one involved in the instant case were held to be gambling devices regardless of the absence of proof of betting or "payoffs". It has been held that multiple-coin pinball machines with features showing the recording of canceled "free plays", and where chance is predominant over skill in the play of the machine such machines will so likely be used for "payoffs" that they will be considered illegal per se. *Stanley v. State,* 194 Ark. 483, 107 S.W.2d 532; *People v. One Machine Known as Circus Days,* 23 Ill. App. 2d 480, 163 N.E.2d 223; *State v. Doe,* 242 Iowa 458, 46 N.W.2d 541; *In Re Return of Trombetta,* 188 Pa. Super. 480, 149 A.2d 483.

In the case of *AAA Amusements, Inc. v. State,* 106 Ga. App. 663, 127 S.E.2d 919, it was held that a pinball machine which awards one to twenty free games if a certain score is obtained by the player is a lottery and the court stated in that case: "It matters not that the value of the thing hazarded is small or infinitesimal if in fact it does have some value." It was held in the case of *A. B. Long Music Co. v. Commonwealth,* (Ky.), 429 S.W.2d 391, that the same type of pinball machines as in the case at bar are lotteries. In the case of *Stillmaker v. Dept. of Liquor Control,* 18 Ohio St. 2d 200, 249 N.E.2d 61, it was held that a pinball machine quite similar to the one involved in the case presented here was a gambling device per se where scores were registered on the machine and new games were obtained for a certain number of points. In the case of *State v. Lake Geneva Lanes, Inc.,* 22 Wis. 2d

151, 125 N.W.2d 622, it was held that a free game was "something of value as a matter of law."

Several states have held that "free plays" were not "money or property" and that the awarding of "free plays" on pinball machines did not make the machines gaming devices under the statute. However, the statutes in those states did not contain the words "other thing of value". *State v. One "Jack and Jill" Pinball Machine,* (Mo.), 224 S.W.2d 854; *Washington Coin Mach. Ass'n v. Callahan,* 142 F.2d 97; *State v. Waite,* 156 Kan. 143, 131 P.2d 708.

The defendant relies on the case of *In Re Wigton,* 151 Pa. Super. 337, 30 A.2d 352, in which the Pennsylvania Court in 1943 held that the right to play a free game, after making a high score on a pinball machine, is neither money nor "other property of value or valuable thing" within the statute declaring that maintenance of a gambling device used to win money or other thing of value or valuable thing was a misdemeanor. However, in 1959 the same Pennsylvania Court held in the case of *In Re Return of Trombetta, supra,* that a pinball machine like the one involved in the present case was a gambling device per se because of the features of the machines which contained a "knockdown button" which was evidence that the machines were designed for "payoffs". Again, in 1963, the same Court in Pennsylvania held in the case of *In Re Three (3) Pinball Machines,* 201 Pa. Super. 28, 192 A.2d 240, that machines which had a device substituted for the "knockdown button" which has the same effect to let the owner of the machine know how many games had been "paid off" were gambling devices per se.

It was held in the case of *State v. Hudson,* 128 W.Va. 655, 37 S.E.2d 553, that the use of any scheme or device by a person who pays a consideration and may receive a prize or nothing, which is determined predominantly by chance, is a lottery. The device used in the *Hudson* case was a punchboard which entitled the holder of a lucky number to a prize resulting predominantly from a chance obtained

for a consideration. It was held in point 4 of the syllabus of the *Hudson* case that: "The essential elements of a lottery are consideration, prize and chance; and any scheme or device, by which a person, for a consideration, is permitted to receive a prize or nothing, as may be determined predominately by chance, is a lottery." The device used in the instant case was a multiple-coin pinball machine with complicated features that were seemingly designed for "payoffs" to be made in the use thereof. The "free plays" provided for in such machine are a prize because they have some value to the player either in playing additional games without charge or receiving a "payoff" and the fact that the "free games" are won predominantly by chance for a consideration because of the coins placed in the machine, we hold it to be a lottery per se under the lottery statute of this State. The indictment employs the words of the statute in charging the offense and is sufficient under the law. In the case of *State v. Hudson, supra,* it was held in point 1 of the syllabus that: "Ordinarily an indictment, containing several counts, which, in each count, states an offense substantially in the words of the statute which creates it, is sufficient on motion to quash and on demurrer."

The second assignment of error with regard to alleged improper evidence is without merit. It is contended that it was error for the court to allow evidence of a "payoff" being made to a witness who testified at the trial and testimony with regard to the conviction of the tavern owner for the making of such "payoff". A motion to suppress such evidence was made before the trial but was overruled and the evidence was allowed to be introduced during the trial. This evidence merely showed that the machine was being used as a gaming device. It is true that this also constituted another offense in violation of Code, 61-10-5, as amended. The defendant is charged with setting up and promoting a lottery with the machine in question and it has been held that evidence of other related offenses closely associated with and occurring about the same time as the offense with which

the defendant was charged was properly introduced to show motive and intent. *State v. Hudson, supra.*

It is true that the general rule is that during the trial of a person indicted for a specific offense evidence of the commission of other offenses which are not connected with the crime for which the person is being tried are inadmissible. However, there are certain exceptions to the general rule and such evidence is admissible where such other offenses have some logical connection with and tend to establish the commission of the specific offense charged against the accused and show motive or intent. In the case of *State v. Hudson, supra,* the defendant was being tried on a lottery indictment for the use of a punchboard and the evidence that he was conducting another gambling game called twenty-six at the same time was held to be admissible evidence in the trial for conducting a lottery with a punchboard. This principle is stated in point 3 of the syllabus of the *Hudson, supra,* case in the following language: "In a criminal case proof of another offense chargeable to the defendant is admissible to show motive or intent, if such other offense is similar and near in point of time to, has some logical connection with, and tends to establish the commission of, the specific offense charged against the defendant, and indicates that such specific offense is part of a system of criminal action." The same principle applies to the conviction of the tavern owner in connection with the pay-off. This shows motive and intent in the use of the machine to conduct a lottery by the owner of the tavern and the distributor and owner of the pinball machine. The evidence shows that the tavern owner and distributor of the machine were in fact partners in the promotion and conducting of the lottery. They shared equally in the cost of obtaining the license and the profits received from the use of the machine and the evidence of the state shows that the defendant paid the fine of the tavern owner in connection with the "payoff".

The contention of the defendant that the giving of instruction number 6 which stated that in effect "free

plays" were a prize or other things of value was in effect directing a verdict and was error because it was a question for the jury is without merit. The issue of whether or not "free plays" were a prize or things of value was a question for the court and was not a jury question and was correctly disposed of by the trial court in holding that the machine was a lottery per se. See *State v. Greater Huntington Theatre Corporation,* 133 W.Va. 252, 55 S.E.2d 681.

The assignment of error relating to the trial court giving the instruction directing the jury to disregard the fact that the machine was licensed by the State of West Virginia and the City of Morgantown is not well taken because the fact that the machine was licensed does not legalize it if it is used in violation of the lottery statute. The licensing of the machine is merely a revenue measure and does not prohibit the prosecution for a violation of the gaming laws or lottery statute. Annot., 89 A.L.R.2d 815, 823; *Ingram v. Bearden,* 212 S.C. 399, 47 S.E.2d 833; *Ringstaff v. Evans,* 212 S.C. 411, 47 S.E.2d 838. If the Legislature of West Virginia or the Municipality of Morgantown desire to amend the gaming or lottery laws it can only be done so by making changes within the statutes or ordinances relating to anti-gambling laws.

For the reasons contained in this opinion the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*

Judges Haden and Kessel did not participate in the decision of this case.